UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

MARIANNE ANNISKIEWICZ,

                                           Plaintiff,

                                                                                        Case # 20-cv-6629-FPG

v.

                                                                                        DECISION AND ORDER

THE CITY OF ROCHESTER, ET AL.,

                                           Defendants.
───────────────────────────────────

## INTRODUCTION

       Plaintiff Marianne Anniszkiewicz brings this action pursuant to 42 U.S.C. § 1983 against two officers with the Rochester Police Department ("RPD")—Officer Brian Cala and Sergeant Jennifer Trenton—and the City of Rochester for alleged violations of her constitutional rights arising out of the shooting of her pet dog Sampson. ECF No. 1. Plaintiff claims Defendants are liable for (1) municipal liability for constitutional violations under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (2) unreasonable search of curtilage under the Fourth Amendment; and (3) unlawful seizure of personal property under the Fourth and Fourteenth Amendments.

       Plaintiff filed her complaint on August 23, 2020. On October 15, 2020, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Rules 12(d) and 56. ECF No. 8. For the reasons that follow, Defendants' motion is DENIED.

# BACKGROUND[1]

At around 11:00 a.m. on June 10, 2018, Plaintiff called 911 to report that her neighbor, Sharon Strickland, was attempting to hit a stray dog with her vehicle on Hollis Street. ECF No. 1 ¶ 14. Animal Control responded to the scene and removed the stray dog. *Id.* ¶ 15.

An hour later, Officer Cala and Sergeant Trenton responded to Plaintiff's home at 236 Belknap Street, approximately one block away from the location on Hollis Street where the incident with the stray dog occurred. *Id.* ¶ 16. Cala and Trenton parked their vehicle in front of Plaintiff's home and approached the front gate to her yard. *Id.* ¶ 19. Without contacting Plaintiff, Cala and Trenton entered Plaintiff's yard. *Id.*

Several seconds later, Plaintiff's pet dog Sampson began trotting from the back of the house and approached Cala and Trenton. According to the complaint, when Cala and Trenton approached, Sampson was not barking, growling, snarling, or exhibiting any signs of aggression. *Id.* ¶ 32. Cala unholstered his gun and pointed at Sampson indicating, "there it is." *Id.* ¶ 33. Cala paused and yelled for Sampson to "back the fuck up." *Id.* ¶ 34. Sampson barked in response and Cala fired one shot, striking the dog in the head and killing him. *Id.* The incident was captured on body cameras worn by Cala and Trenton. Plaintiff's four-year-old grandson was standing behind where the incident occurred and witnessed Sampson being shot. *Id.* ¶ 35.

According to the complaint, in the five-year period from 2004 to 2009, RPD officers shot 87 dogs, killing 35 of them. *Id.* ¶ 72. This is the result of the RPD's failure to adopt policies or provide training to police officers on how to safely interact with dogs, despite knowing the that unnecessary canine injuries or deaths were commonplace. *Id.* ¶¶ 86-100. Plaintiff alleges that the unjustified shooting of her dog by RPD officers is part of this pattern and practice.

---

[1] Unless otherwise indicated, the facts are derived from the complaint. ECF No. 1.

**LEGAL STANDARD**

Defendants' motion invokes both Rule 12(b)(6) and Rule 56.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting another source), and "draw all reasonable inferences in Plaintiffs' favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

On the other hand, summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation."  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## DISCUSSION

Defendants seek to dismiss Plaintiff's Fourth Amendment search claim and Plaintiff's *Monell* claim.  They also move to dismiss or, in the alternative, for summary judgment with respect to the Fourth Amendment seizure claim, by relying on the body worn camera footage from the incident.  The Court analyses each claim separately below.

**I.  Unlawful Search**

Plaintiff claims that Cala and Trenton violated her Fourth Amendment rights when they entered the curtilage of her home without a warrant.  ECF No. 1 ¶¶ 136, 138.  Defendants argue that this claim fails as a a matter of law because the part of Plaintiff's property Cala and Trenton entered was not curtilage and was therefore not entitled to Fourth Amendment protection.  In any event, they say, Cala and Trenton had a license to enter the property.

Defendants' arguments misconstrue the facts alleged in the complaint, which the Court must take as true on this motion to dismiss.  Defendants assert that Cala and Trenton "passed through an unlocked front gate and walked down the paved front walkway to [P]laintiff's front door."  ECF No. 8-5 at 7.  To be sure, "the knocker on the front door is treated as an invitation or license to attempt entry" and, as a result, "a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do."  *Florida*

*v. Jardines*, 569 U.S. 1, 8 (2013) (internal quotation marks omitted). Similarly, "when a police officer enters private property for a legitimate law enforcement purpose and embarks only upon places visitors could be expected to go, observations made from such vantage points are not covered by the Fourth Amendment." *United States v. Titemore*, 437 F.3d 251, 260 (2d Cir. 2006) (quoting another source).

But the complaint alleges that Cala and Trenton entered Plaintiff's "fenced-in" "backyard." ECF No. 1 ¶¶ 136, 138. Nowhere does the complaint allege, as Defendants assert, that Cala and Trenton walked up to Plaintiff's front door. Rather, the complaint alleges that Cala and Trenton entered a gated portion of Plaintiff's yard. The Second Circuit has held that it is "clearly established that a fenced-in side or backyard directly abutting a single-family house constitutes curtilage," *Harris v. O'Hare*, 770 F.3d 224, 240 (2d Cir. 2014) (discussing qualified immunity), *as amended* (Nov. 24, 2014), and Defendants do not argue that they had an implied license to enter Plaintiff's backyard, *see United States v. Alexander*, 888 F.3d 628, 636 (2d Cir. 2018) (suggesting, in dicta, that a back portion of a driveway, which was not necessary to cross to enter a home, was outside the curtilage and thus not subject to an implied license to enter). Therefore, insofar as it is premised on a misinterpretation of the complaint, Defendants' argument fails. As a result, Defendants' motion regarding the Fourth Amendment unlawful search claim is DENIED.

**II.    Unlawful Seizure**

Defendants argue that the body worn camera footage indisputably establishes that the Cala acted reasonably when he shot and killed Sampson. Although the footage is not referenced in the complaint, Defendants argue that the Court may consider it because Plaintiff relied on it in drafting the complaint. Alternatively, Defendants argue that the Court should convert the motion to dismiss

into one for summary judgment and find in their favor because, in light of the footage, there is no genuine issue of material fact that the officers acted reasonably. Both arguments fail.

    **A.    Motion to Dismiss**

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperll, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting another source).

Defendants concede that Plaintiff did not reference the body worn camera footage in the complaint. ECF No. 8-5 at 5. Rather, they argue that the Court can consider the body worn camera footage because Plaintiff's counsel was in possession of the footage at the time the complaint was filed, Plaintiff was not present when her dog was killed, and thus, Plaintiff's counsel must have relied upon the footage when drafting the complaint. ECF No. 8-5 at 5.

But there is no indication that Plaintiff actually relied on the footage in drafting the complaint. The Second Circuit has been clear that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153. While Defendants may be correct that Plaintiff relied on the video footage, it is not clear from the complaint itself and the Court is not prepared to venture a guess. Therefore, the Court cannot assess the footage in deciding whether Plaintiff states a claim for relief under Rule 12(b)(6).

B.     **Motion for Summary Judgment**

In the alternative, Defendants argue that the Court should treat this part of their motion as one for summary judgment under Rule 56. "Ordinarily, a motion for summary judgment filed at this stage of litigation would be unseasonable. . . . But courts in this circuit have granted preanswer motions for summary judgment . . . — albeit only in the rarest of cases." *Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 432 (S.D.N.Y. 2019) (omitting citations, quotation marks, and alterations). This is not one of those cases.

"[T]he unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment." *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013). The parties here dispute whether the killing of Sampson was unreasonable. Plaintiff bears the burden of demonstrating unreasonableness. *Id.* The Court must "analyze this question from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, 572 U.S. 765, 757 (2014) (quotations and alteration omitted).

"To determine whether a seizure is unreasonable, a court must 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion' and determine whether 'the totality of the circumstances justified the particular sort of seizure.'" *Carroll*, 712 F.3d at 651 (alterations omitted) (quoting *Tennessee v. Garner*, 471 U.S. 1, 89 (1985)). The Court is mindful that "ensuring officer safety" is a "particularly significant governmental interest[]." *Id.* Conversely, the shooting of an owner's "dog [is] a severe intrusion given the emotional attachment between a

7

dog and an owner." *Id.*  As the Fourth Circuit has explained, "private interests in dogs—and family pets especially—are highly significant since dogs have aptly been labeled 'Man's Best Friend,' and certainly the bond between a dog owner and his pet can be strong and enduring." *Ray v. Roane*, 948 F.3d 222, 227 (4th Cir. 2020) (quotation omitted).  "[W]hen a dog is seized—and especially, as here, where it is killed, not merely injured or detained—the intrusion on the owner weighs heavily in favor of finding the seizure unreasonable . . . ." *Matteson v. Hall*, No. 18-CV-6772, 2019 WL 2192502, at *7 (W.D.N.Y. May 21, 2019) (quotation omitted) (collecting cases).

The question here is whether a reasonable jury could find that Cala and Trenton behaved unreasonably in shooting Sampson.  Defendants primarily argue that Cala and Trenton's behavior was reasonable in light of Sampson's behavior.  They say that Sampson "ran at Officer Cala," paused briefly, and then "resumed charging at Officer Cala while barking aggressively."  ECF No. 8-5 at 10.  They conclude that "[g]iven the large size, aggressive demeanor, continuing charge and speed of the dog, Officer Cala's action was reasonable."  *Id.*  At bottom, Defendants argue that the body worn camera footage of the incident decisively establishes that Cala's action was appropriate.

But the body worn camera footage does not support this conclusion.  Indeed, the body worn footage does not show much at all, which is the precise reason why summary judgment cannot be granted on this basis alone.  The body worn camera footage shows Cala walk up to a raised deck and say, "there it is, there it is"—presumably in reference to Sampson—and then yell, "back the fuck up."  ECF No. 8-4.  The viewer only gets a glimpse of Sampson and it is impossible to discern Sampson's body language.  Sampson barks but the camera is not pointed at Sampson.  Then, Cala then shoots Sampson, but the camera does not capture the shooting.  Sampson only comes into frame, laying below the steps to the deck, after he was shot.

Trenton's body worn camera footage is even less helpful. The camera captures a brief glimpse of Sampson, but again, it is not possible to discern Sampson's behavior. The camera is not pointed at Sampson or Cala throughout the incident.

Based upon the review of the body worn camera footage, the Court cannot say unequivocally, at this juncture and on this record, that Cala's actions were reasonable. There are material facts that cannot be definitively resolved by reference to the footage, including whether Sampson was acting aggressively and whether Cala and Trenton could have taken mitigating steps. *See Strong v. Perrone*, No. 17-CV-6183, 2020 WL 1445877, at *3 (W.D.N.Y. Mar. 25, 2020). None of those facts have been developed. Accordingly, the Court will provide the parties with an opportunity to engage in discovery. *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted [i]f *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. . . The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." (quoting other sources, internal citations omitted)).

### III.  Qualified Immunity

Cala and Trenton next argue that they are entitled to qualified immunity on the search and seizure claims. Again, Defendants' arguments fail.

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). "Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

9

(quotation and alteration omitted). "Qualified immunity is an affirmative defense on which the defendant has the burden of proof." *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018).

Qualified immunity will shield an officer from liability for damages if his "conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* There need not be "a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the . . . constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quotation omitted). "Although, usually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order) (concluding that facts, appearing on the face of the complaint, "plainly do not support a defense of qualified immunity") (quoting other sources).

With respect to the seizure, it is clearly established that killing "a pet without justification constitutes a Fourth Amendment violation." *Azurdia v. City of New York*, No. 18-cv-4189, 2019 WL 1406647, at *8 (E.D.N.Y. Mar. 28, 2019); *see also Ray*, 948 F.3d at 229-30 (finding that, although there was no "directly on-point, binding authority" in the Fourth Circuit, the principle "that it is unreasonable for a police officer to shoot a privately owned animal when it does not pose

an immediate threat to the officer or others" was clearly established by the general principles espoused in prior Fourth Circuit opinions and the consensus of the other circuits). Taking as true the facts in the complaint, and even in light of the footage, Plaintiff has alleged a sufficient claim that Cala and Trenton killed Sampson "without justification." Accordingly, at this stage, Cala and Trenton are not entitled to qualified immunity on the seizure claim.

With respect to the search of Plaintiff's property, and as explained above, the facts on the face of the complaint do not support a finding of qualified immunity because it is clearly established that law enforcement do not have a license to enter Plaintiff's backyard. *See Alexander*, 888 F.3d at 636; *Harris*, 770 F.3d at 240. Accordingly, Cala and Trenton are not entitled to qualified immunity at this stage on the search claim.

## IV.    *Monell*

Finally, Defendants argue that Plaintiff fails to plausibly allege municipal liability because Plaintiff does not "demonstrate an underlying Constitutional violation occasioned by a municipal agent acting pursuant to the offending municipal policy or practice." ECF No. 8-5 at 13. Defendants suggest that because Plaintiff's other claims fail, the *Monell* claim must also fail. However, as discussed above and at this stage, Plaintiff's allegations demonstrate several underlying constitutional violations sufficient to preclude a motion to dismiss.

In any event, municipality can only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff has adequately alleged a "policy or custom" under *Monell*.

Plaintiff alleges that the RPD failed to adequately train officers or develop policies on how to safely interact with dogs, resulting in numerous police-involved canine shootings. ECF No. 1

¶ 51. Indeed, Plaintiff asserts that the RPD trains officers to trespass on residential property and to shoot dogs they encounter while the officers are trespassing. *Id.* ¶¶ 56, 62. Between 2013 and 2018, RPD officers shot and killed nearly one dog per month. *Id.* ¶¶ 36, 74. Before that, RPD officers shot their guns at dogs nearly four times per month, killing slightly less than one dog every two months. *Id.* ¶¶ 36, 73. These allegations, at this stage, are sufficient to allege an unconstitutional policy or practice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and for summary judgment, ECF No. 8, is DENIED.

IT IS SO ORDERED.

Dated: April 29, 2021
       Rochester, New York

                                                      HON. FRANK P. GERACI, JR.
                                                      Chief Judge
                                                      United States District Court