UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**Exhibit C**

MARIANNE ANNISZKIEWICZ,

                    Plaintiff,

-against-

THE CITY OF ROCHESTER, a municipal entity,
POLICE OFFICER BRIAN CALA, SERGEANT JENNIFER
TRENTON,

                    Defendants,

**AFFIDAVIT OF DELANEY A.
GLAZE**

Case No. 20-cv-6629
(FPG)(MWP)

STATE OF NEW YORK    }
COUNTY OF MONROE  } ss:

      **DELANEY A. GLAZE**, being duly sworn, deposes and states:

1. My name is Delaney A. Glaze, and I am a resident of Monroe County, New York State.

2. In the summer of 2018, I was on summer break between my 1L and 2L year of law school.

3. During that summer, I worked as a legal intern with the Monroe County District Attorneys Office, specifically in the DWI Bureau and Elder Abuse Bureau.

4. Due to my interest in criminal litigation at the time, specifically prosecution, my father, a retired Rochester Police officer, arranged for me to go on a ride along with Officer Brian Cala for me to see what happens before the prosecution process.

5. On the morning of June 10, 2018, I arrived at the Rochester Police Department, where I met with Officer Cala.

6. Throughout the day, I shadowed Officer Cala as he and several other Rochester Police Officers went to various calls. For the most part, all calls that day had been domestic disputes.

7. In the afternoon, Officer Cala and myself headed to a call that involved dogs.

8. We pulled up to the house on Belknap Street.

9. Upon arrival, I observed that the home was fenced in, at least on the side where I was standing. It is my recollection that there were weeds so high it was hard to see the ground in certain areas, and the area was not well cared for.

10. Officer Cala and myself exited the police car and spoke with another/other Rochester Police Officer(s) that responded to the same call.

11. At some point thereafter, the officers and myself made our way to the fence around the home.

12. The fence was shaken and/or kicked at that time by the police officers. At that time, I assumed that the officers made the noises by the fence to alert the homeowners attention of their arrival, or to 'draw out' the dogs from where they may be located.

13. At that time, there was no indication that any dogs or people were present in that direct area, so the officers opened the fence gate and we entered the yard.

14. I attempted to stay behind the officers I was near, to ensure that I was not in their way.

15. It is my recollection that a female officer made her way to the door of the home, as the other officer(s) and myself were standing inside the yard.

16. Not long after entering the yard, the officers, including Officer Cala, and myself, spotted two large dogs hurling themselves towards us at a fast pace from the other side of the yard.

17. One dog appeared to be a large Newfoundland, as I have owned a Newfoundland so I am familiar with what they look like, and the other appeared to be a large Pitbull.

18. The officer(s) and myself backed up towards the fence we just entered from.

19. The dogs made their way over to the side of the yard we were on.   As the dogs drew near us, I became very scared and quickly found my way out of the fenced in yard and moved towards the police car that was parked right outside the fence.

20. I quickly turned towards the house and saw the dogs stopped just feet away from the Officers, including Officer Cala.

21. The dogs were barking at the officers. At that point in time, Officer Cala had his weapon drawn. The dogs were not presenting in a submissive, curious, or nice way. The dogs were presenting in what I deemed to be an aggressive manner.

22. For a moment, it appeared that the dogs were not going to move any closer to the officers, but then the Newfoundland lunged aggressively towards the officer(s).

23. At that time Officer Cala discharged his weapon, hitting the Newfoundland, killing it what seemed like, instantly.

24. Upon the discharge of the weapon, the Pitbull bolted in an unknown direction, but I did hear someone shout that it was outside of the fence, which frightened me because I was outside of the fence at that time.

25. At this point in time, I ran to the police car, crying, and called my dad.

26. Following the gunshot, for the first time, the suspected owner (of the home and the dogs) made an appearance.

27. The owner was visibly upset and screamed at the officers. Several neighbors came out into the street and on the sidewalk to see what happened.

28. At that time and fearing for the safety of myself due to the owner behaving in what I deemed to be an aggressive and confrontational manner, and still not sure where the rogue Pitbull went, I got inside the police car to get out of the way and remained there until Officer Cala returned to the car and we made our way back to the police station.

29. For several days following the shooting, I was incredibly upset and shaken due to being so scared of almost being attacked and seeing a dog shot in front of me.

30. Although seeing that dog shot was not pleasant, there was not any doubt in my mind, and to this day, there is no doubt in my mind, that had Officer Cala not discharged his weapon on that dog, someone would have been seriously injured or killed that day.

Dated:        Rochester, New York
              October, 11, 2023

_Delaney_
Delaney A. Glaze

Sworn to before me this
11th day of _Oct_, 2023.
_Mary Ann Duffy_
Notary Public

Mary Ann Duffy
Notary Public State Of New York
Regis. No. 01DU5971600
Qualified in Monroe County
Commission Expires Dec. 31, 2026