**Exhibit L**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHERYL COX,<br><br>                                          Plaintiff,<br><br>-against-<br><br>THE CITY OF ROCHESTER, DAKOTA VANBREDERODE,<br><br>                                          Defendants. | 22-cv-6207 (FPG)(MJP)<br><br>**PLAINTIFF'S COUNTERSTATEMENT OF UNDISPUTED FACTS PURSUANT TO RULE 56.1** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Elliot Dolby Shields
Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016

effectively. (Id.) The training materials emphasized the importance of understanding canine behavior and applying non-lethal methods to manage situations involving dogs.

The implementation of this training had a significant and immediate impact. The number of dogs shot by Buffalo police officers dropped dramatically. (¶ 126) Specifically, the number of dog shootings decreased by 62%, from 26 incidents in 2013 to just 10 in 2017 (Crosby Report, pp. 25-26). This reduction is a clear indication of the training's effectiveness in reducing unnecessary harm to dogs during police operations.

Lieutenant Peter Nigrelli of the Buffalo Police Department testified that the training was indeed mandatory for all officers and that it played a critical role in changing how officers approached encounters with dogs. (See Ex 45). He noted that since the implementation of the training in 2014, the Buffalo Police Department saw a marked decrease in the number of dogs shot by officers, particularly during SWAT operations. He attributed this positive change directly to the comprehensive nature of the COPS training, which provided officers with the necessary tools and knowledge to handle dog encounters more safely (Ex 45 22:1-23:2). This testimony underscores the effectiveness of the DOJ training and highlights the RPD's failure to adopt similar, readily available, and proven methods to prevent unnecessary shootings of dogs.

2. **Whether the City failed to properly supervise and discipline its officers for shooting dogs a jury question.**

   i. *This theory was adequately pled.*

The theory was clearly adequately pled in the complaint. *See*, *Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346, 347 (2014) (although § 1983 not pled, defendants were advised of the factual basis of the claim, and plaintiffs were "required to do no more"; amendment must be allowed to assert § 1983). If the factual allegations support a valid claim, the court must treat the complaint

22

as raising that claim, even if the plaintiff has not cited the right legal theory. *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

### ii. There is sufficient evidence to go to the jury.

No RPD officer has ever been disciplined or required to undergo additional training for shooting a dog. (¶ 62). This is despite the long history of troubling dog shootings by RPD officers. The evidence reveals a systemic failure by the RPD to supervise or discipline its officers in incidents involving the shooting of dogs. This lack of accountability has contributed to a culture where officers feel free to use lethal force against dogs without fear of repercussions.

The only person required to review an incident where an officer fires a gun at a dog is the officer's immediate supervisor, normally a sergeant. (¶¶ 63-64). The Professional Standards Section (the RPD's internal affairs), is not required to review incidents where firearms are discharged at dogs. (¶¶ 64-65).

The RPD has not changed any of its training on canine encounters in response to prior incidents where officers have shot dogs (¶ 66). The City also has not made any recommendations for changes in its policies or training regarding the use of force against dogs after reviewing BWC of dog shootings (¶67). The City does track the number of dogs shot by its officers, but it does not conduct any statistical analysis of this data or generate reports on it, unless specifically requested to do so (¶ 68).

Commander Fabian Rivera testified that during his tenure at the RPD, no officers were disciplined or required to undergo retraining as a result of shooting a dog. (¶ 128) He mentioned that although he knew of four or five officers that had shot dogs, none were disciplined, though some were ridiculed for missing their shots. (Id.) Specifically, Chief Rivera referenced an incident involving Officers Mike Johnson and Korey McNees, who were ridiculed for missing shots at a

23

small dog, but they did not face any disciplinary actions (¶ 128-129). Rivera also confirmed that there was no record of disciplinary actions taken against officers Nellist and Kelly in this case. (¶ 130).

Similarly, Aaron Springer testified that, to his knowledge, no officer within the RPD has ever been disciplined or required to undergo retraining specifically as a result of shooting a dog. (¶ 131) Springer was unaware of any measures taken to reduce the number of dogs shot while he was with the RPD, other than a training bulletin with various "aggressive" dog postures. (¶ 132) Springer does not remember any other specific trainings during his time with the RPD from 1996 to 2020 regarding how to safely interact with dogs. (¶ 133 ) The RPD trains officers that if a dog is running at them and they perceive the dog to be an imminent threat, then they can shoot the dog. (¶ 134) However, the RPD does not provide specific training to officers to determine if the dog objectively poses and imminent threat.

This is particularly concerning, as numerous officers have shot multiple dogs. For example, former RPD Sgt. Daniel Zimmerman testified that he shot approximately 25 dogs during his time as an officer with the RPD. (¶ 69) He stated that these shootings occurred between 1988 and 2009, particularly during his time in the narcotics division before 2010. Zimmerman mentioned that after the last time he shot a dog, there was no retraining or disciplinary action taken against him. Furthermore, he noted that the RPD did not provide any training regarding interactions with dogs during police duty during his tenure (Id.).

On August 11, 2019, Officer Kenneth Pinkney shot a dog on Cedarwood Terrace. As detailed by Pinckney at his deposition, he shot the dog while it was standing on the grassy area between the sidewalk and the curb (¶ 85). The dog had previously retreated to its yard but then turned and barked at Pinckney and another officer while in an "assertive, dominant position" (Id.).

24

The dog had not advanced towards the officers or left the curb before Pinckney fired his shotgun (Id.) Pinckney clearly violated RPD policy, as the dog was not advancing or attacking in any way. Yet Pinckney was not disciplined or required to undergo any additional training as a result of the incident.

Dr. Crosby emphasizes that effective supervision and discipline are critical components of maintaining good and accepted police practices. The absence of these elements in the RPD's response to dog shootings indicates a systemic failure of accountability within the department. This failure is particularly egregious given the availability of comprehensive training resources that could have been implemented to prevent such incidents. (Ex 17, Crosby rpt. 11-16).

This lack of supervision and discipline underscores the City's failure to supervise its officers and reflects a deliberate indifference to the constitutional rights of residents and their pets.

The City's claim that it has adequately supervised and disciplined its officers is not supported by the evidence. Instead, the City's inaction in the face of repeated dog shootings demonstrates a clear failure to hold officers accountable, thereby perpetuating a pattern of unconstitutional behavior. This lack of accountability directly contradicts the City's assertion and highlights the need for significant reforms within the RPD to address these systemic issues.

## CONCLUSION

For all of the reasons stated herein, Plaintiff respectfully submits the Court should deny the City's motion for partial summary judgment in its entirety.

Dated: August 26, 2024             Roth & Roth, LLP
       New York, New York

                                          ~//s//~
                                  Elliot Dolby Shields