# JURY CHARGE

## PROVINCE OF THE COURT AND JURY

Members of the Jury,

Summations have been completed and you have heard the evidence and arguments of counsel.

Before I start the charge, I would like to thank you all for your patience and for your promptness and diligence throughout this trial. I want to compliment all of you on the close attention that you have given the case.

We come now to that portion of the trial in which you will be instructed on the law that is applicable in this case and that will guide you in your deliberations.

It is your duty as jurors to follow the law as stated in my instructions and to apply the rules of law so given to the facts as you find them from the evidence in this case.

As you note, I will be reading you my instructions because I want to make certain that I give you accurate instructions.

You are not to single out any one of my instructions alone as stating the law, but must consider the instructions as a whole; neither are you to be concerned with the wisdom of any rule of law as stated by me.

Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict in this case upon any view of the law other than that given in my instructions to you; just as it would be a violation of your sworn duty as judges of the facts to base a verdict upon anything but the evidence in this case.

You are to perform your duty without bias or prejudice to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice or public opinion.

The parties and the public expect that you will carefully and impartially consider all the evidence in this case, follow the law as stated by me, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, holding the same or similar stations in life.

I want to make it clear that it is not my function or intention to favor one side or the other or to criticize anybody in any way whatsoever

or to indicate to you—the jurors—that I have any opinion as to the truthfulness of any witness or to the merits of this case.

During this trial as in any trial, it was necessary for me to make certain rulings on the admission of evidence and on motions made by counsel with respect to the applicable law. I charge you that you must not infer from any ruling that I have made in the course of this trial or from anything that I may have said or the manner in which I may have said it or any question that I may have asked during the course of the trial, that I have any view one way or the other with respect to the parties in this lawsuit or as to the outcome of this trial. It is your job to make those determinations and not mine. It is your recollection of the evidence and your view of what transpired during this trial which controls. Do not enter the jury room and embark upon your appointed task with the notion that I have a feeling one way or the other as to the outcome of this case.

That is your function; yours alone, and I leave it entirely to you as jurors.

My sole function is to control the trial and have it completed promptly and fairly and to rule on matters of evidence and instruct you as to the law.

## CONDUCT OF COUNSEL

It is the duty of the attorneys for each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his or her client because the attorney objected to the admissibility of evidence or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

Source: Sand, Modern Federal Jury Instructions, Instr. 71-6.

## SYMPATHY

Under your oath as jurors, you are not to be swayed by sympathy. You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict based on the evidence or lack of evidence. If you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at the just verdict.

Source: Sand, Modern Federal Jury Instructions, Instr. 71-10.

## PUBLICITY – FINAL CHARGE

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. You must completely disregard any report which you have read in the press, seen on television, seen in social media, or heard on the radio. Indeed, it would be unfair to consider such reports, since they are not evidence and the parties have no opportunity of contradicting their accuracy or otherwise explaining them away. In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

You must not conduct any independent research about the case, the matters in the case, the individuals or institutions involved in the case. In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs or use any other electronic tools to obtain information about this case or help you decide the case.

Please do not try to find out information from any source outside the confines of this courtroom. As I have consistently reminded you, until you retire to deliberate you may not discuss this case with anyone, even your fellow jurors. After you retire to deliberate, you may begin

discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end. I know that many of you use cell phones on the Internet and other tools of technology. You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through email, text messaging, or on X (formerly Twitter), through any social media or website, including Facebook, Google plus, my space, LinkedIn, or YouTube, or any other similar manner. You may not use any similar technology or social media, even if I have not specifically mentioned it here. I expect you will inform me as soon as you are aware of another juror's violation of these instructions.

Source: Sand, Modern Federal Jury Instructions, Instr. 71-27; proposed model jury instructions the use of electronic technology to conduct research on or communicate about a case prepared by the judicial conference committee on core administration and case management, June 2012.

## EVIDENCE IN CASE

Now, what is evidence?

Statements and arguments of counsel are not evidence in the case.

The evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them, the deposition testimony that you have heard, all the exhibits received in evidence, regardless of who may have produced them, as well as any facts which may have been admitted or stipulated.

Anything you may have seen or heard outside this courtroom concerning this case is not evidence and must be entirely disregarded.

I instruct you that certain evidence was admitted for a limited purpose. Evidence regarding the City's policies and training, supervision and discipline pertain to the claims against the City of Rochester. However, you may also consider the City's policies and training in determining whether the officers' actions were reasonable under the totality of the circumstances.

## QUESTIONS ARE NOT EVIDENCE

If a lawyer asks a witness a question that contains an assertion of fact, you may not consider the assertion as evidence of that fact. A lawyer's statements are not evidence whether the statements are made during opening or closing arguments or during the case.

Source: Devitt Blackmar & Wolff, Federal Jury Practice and Instructions, § 11.13.

## JURY'S RECOLLECTION CONTROLS

If any reference by the court or by counsel to matters of evidence does not coincide with your own recollection, it is your recollection that should control during your deliberations.

If, during your deliberations, your recollection of any part of the testimony should fail, or you should have any question about my instructions to you on the law, you have the right to return to the courtroom for the purpose of having such testimony or instructions read to you. If you desire just a portion of a witness's testimony, please indicate that or else the entire testimony, both direct and cross-examination, will be read. Also, if you request testimony, please know that the court reporter will need to find that testimony. The court reporter must find the requested testimony in her notes. I'm telling you that so that you understand that it will take time to comply with your request.

You may ask for the exhibits that have been admitted and they will be given to you in the jury room, with the exception of any video evidence, which we can play for you here in the courtroom at your request.

Source: Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, § 15.05.

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Obviously, there are no windows in this courtroom and you cannot look outside. Let us assume that as we are sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining; so you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume,

it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer based on reason and experience and common sense from one established fact (the wet umbrellas) the existence or non-existence of some other fact (its raining).

Circumstantial evidence is of no less value than direct evidence; for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

Source: Sand, Modern Federal Jury Instructions, Instr. 74-2

## DEPOSITION TESTIMONY

Some of the testimony you heard consisted of sworn testimony given at a deposition. You may consider deposition testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given live at trial.

## EVALUATION OF THE EVIDENCE

In determining whether any fact in issue has been proven, you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them and all exhibits received in evidence regardless of who may have produced them.

How do you evaluate the evidence? How do you perform this function?

As the sole judges of the facts you must determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you attach to it. It is up to you.

The law requires that your decision be made solely upon the evidence admitted before you.

The law does not, however, require you to accept all the evidence I have admitted.

In determining what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses and determine the weight you choose to give to a witness's testimony.

There is no magical formula for evaluating testimony. You bring with you to this courtroom all the experience and background of your everyday lives.

In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you by others.

The same tests that you use in your everyday dealings are the tests which you apply to your deliberations in this case.

## INFERENCES

In summations, the attorneys may have asked you to infer, based on your reason, experience, and common sense, from one or more established facts, the existence of some other fact. An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists based on another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified considering your experience.

Source: 4 Sand, Modern Federal Jury Instructions, § 75-1.

## CREDIBILITY OF WITNESSES

In determining a witness's credibility, you may consider the interest or lack of interest of any witness in the outcome of this case; the bias or prejudice of any witness, if there be any; the appearance, the manner in which the witness gave testimony on the stand; the opportunity the witness had to observe the facts concerning which he or she testifies; the probability or improbability of that witness's testimony when viewed in light of all other evidence in the case. These are all items to consider in determining the weight, if any, you will assign to that witness's testimony.

If such considerations make it appear that there has been a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories together.

However, if that is not possible, you will then have to determine which of the conflicting versions you will accept.

The bottom line is you can consider all these items in deciding whether to believe any witness. You can accept a witness's testimony, or you can reject it. The factors I have mentioned to you are simply things

*Dempsey et al. v. City of Rochester, et al.*, No. 19-CV-6780-MJP        20 of 78

you can consider in your own mind in in concluding whether you believe the witness, or not.

People employed by the government, including law enforcement officers, do not stand in any different position in the community than other persons, and their testimony is not entitled to any greater weight. Obviously, it is not entitled to any lesser weight because they happen to be law enforcement officers. A person who takes a witness stand subjects his or her testimony to the same examination and the same test that any other witness does. You should apply all the things I have said about credibility in deciding whether to accept or reject any witness's testimony.

## INTERESTED WITNESS

Plaintiffs Charles Dempsey and Leona Dempsey and Defendants Officers Javier Algarin and Adam Gorman testified before you. As parties to the action, they are interested witnesses. The City of Rochester is also a Defendant and a portion of LT Michael Ciulla's video deposition testimony was played for you in his capacity as representing the City of Rochester, also an interested party.

An interested witness is not necessarily less credible than a disinterested witness. The fact that a party is interested in the outcome of the case does not mean that the party or person testifying on behalf of a party has not told the truth. It is for you to determine from his or her demeanor on the stand and in such other tests as your experience dictates whether or not the testimony has been colored intentionally or unintentionally by that interest. You are at liberty, if you deem it proper under all the circumstances, to disbelieve the testimony of such a witness even though it is not otherwise impeached or contradicted. However, you are not required to disbelieve such a witness and may accept all or such part of his or her testimony as you deem reliable and reject such part as you deem unworthy of acceptance.

*Dempsey et al. v. City of Rochester, et al.*, No. 19-CV-6780-MJP          22 of 78

## BIAS

Similarly, in deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.

Source: 4 Sand, Modern Federal Jury Instructions, § 76-2 (modified).

## IMPEACHMENT

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you think it deserves.

If a witness is shown to have knowingly testified falsely concerning any material matter, the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testified falsely about one material fact is quite likely to testify falsely about everything. You are not *required*, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem to be true and disregard what you feel is false.

*Dempsey et al. v. City of Rochester, et al.*, No. 19-CV-6780-MJP        24 of 78

## STIPULATIONS

The attorneys for the parties ==have entered stipulations concerning certain facts== that are relevant to this case. A stipulation of fact is an agreement among the parties that a certain fact is true. Accordingly, you should regard such facts as true. What weight to give those facts, however, is entirely up to you. Once again, you are the sole judges of the facts of the case, and you decide what weight to give those facts.

Source: Modern Federal Jury Instr.–Civil § 74.02, Inst. 74-4 (adapted).

## BURDEN OF PROOF – GENERAL

This is a civil case and, as such, the plaintiffs have the burden of proving the material allegations of their claims by a fair preponderance of the evidence.

If, after considering all the testimony, you are satisfied that Plaintiffs have carried their burden on each essential point as to which they have the burden of proof, then you must find for Plaintiffs on their claims. If after such consideration you find the testimony of both parties to be in balance or equally probable, then Plaintiffs have failed to sustain their burden, and you must find for Defendants.

**[note plaintiffs' objection to not placing BOP on defendants for affirmative defense.]**

## BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

Plaintiffs have the burden of proving every disputed element of their claims to you by a preponderance of the evidence. If you conclude that Plaintiffs have failed to establish their claims by a preponderance of the evidence, you must decide against them.

I will soon instruct you on the elements of Plaintiffs' claims brought under Title 42 U.S. Code § 1983. Again, Plaintiffs have the burden of proving each and every element of their claims by a preponderance of the evidence. If you find that any one of the elements of their claims that you are considering has not been proven by a preponderance of the evidence, you must return a verdict for Defendants on that claim.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the

relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof, which in this case is Plaintiffs. That is because the party bearing the burden must prove more than simple equality of evidence—he or she must prove the element at issue by a preponderance of the evidence. On the other hand, Plaintiffs need prove *no more* than a preponderance. So long as you find that the scales tip, however slightly, in favor of Plaintiffs—that what Plaintiffs claim is more likely true than not true—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind. [note that plaintiffs object that affirmative defenses should place BOP on defendants.]

Source: 4 Sand, Modern Federal Jury Instructions, § 73-2 (modified); 5 Sand, Modern Federal Jury Instructions, § 87-67 (modified).

**UNREASONABLE SEARCH**

**(FOURTH AMENDMENT – § 1983)**

***Against Officers Javier Algarin and Adam Gorman***

## A. Overview

Now I will address the elements of the claims. Plaintiffs Charles and Leona Dempsey allege that Officers Algarin and Gorman searched their fenced backyard without a warrant, or without consent, or without probable cause and exigent circumstances. Your task is to determine whether that search violated the Fourth Amendment.

The Fourth Amendment to the Constitution of the United States protects against "unreasonable searches." The right to be free from unreasonable government intrusion in one's own home is at the very core of the Fourth Amendment's protection. Regarding whether the search was prohibited, the Fourth Amendment also applies to searches of areas outside of the four walls of a residence if the "area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." We refer to these intimate spaces outside of the home as "curtilage."

It is established that a fenced-in side or backyard directly abutting a single-family residence constitutes curtilage. The United States Supreme Court has held that the curtilage "is part of the home itself for Fourth Amendment purposes," and that officers may not physically intrude into that area without a search warrant, or consent or probable cause and exigent circumstances. [Repeated in the *Monell* section, p. 44]

Because the Dempseys allege that the search occurred in their fenced-in yard, they must prove that the search violated the Fourth Amendment.

## B. Elements Plaintiffs Must Prove

To establish this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. That the area searched by the officers was the curtilage of Plaintiffs' home. This factor is not in dispute so you may consider that it has been established.

2. That Officer Algarin or Officer Gorman, or both physically searched that area.

3. That the search occurred without a warrant and without the Plaintiffs' voluntary consent. This factor is not in dispute so you may consider that it has been established.

4. That the officers lacked probable cause and exigent circumstances at the moment they searched the fenced-in yard; and

5. That the warrantless search caused a violation of Plaintiffs' Fourth Amendment rights.

## C. Definition of Probable Cause

Probable cause for a search exists when the facts and circumstances within an officer's knowledge, and of which he had reasonably trustworthy information, are sufficient for a reasonable officer to believe that an offense has been or is being committed, and that suspects or evidence bearing on that offense will be found in the place to be searched. Whether probable cause exists is based on what a reasonable officer would do under the circumstances and does not consider Officers Algarin's or Officer Gorman's state of mind.

## D. Exigent Circumstances

Even if probable cause exists, officers may search without a warrant only if a true emergency made obtaining a warrant or consent impractical. Exigent circumstances require an objectively urgent need to render aid or act—such as a threat to life, an ongoing emergency, imminent loss or destruction of evidence, or "hot pursuit" of a fleeing suspect and items that may gravely endanger themselves or others. Exigent circumstances justify a search only where officers face a true "now or never" emergency, and the exception is strictly limited. You must evaluate the totality of the circumstances based on what the officers knew at the moment of the search.

## E. Personal Involvement

A defendant officer is liable if he personally searched the curtilage unlawfully. It does not foreclose the liability of a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be

"indirect"—such as ordering or helping others to do the unlawful acts, rather than doing them him—or herself.[1]

This principle follows the general § 1983 requirement of personal involvement.

---

## F. Verdict

If you find that either of the officers:

- searched Plaintiffs' fenced backyard,

- without a warrant,

- without consent,

- without probable cause to believe evidence or a suspect was in the yard, and

- without exigent circumstances creating a true emergency,

then their search violated the Fourth Amendment, and your verdict on this claim must be for Plaintiffs.

---

[1] Use of the phrase "direct participation" can also lead to underinclusion, depending on the meaning one attributes to the word "direct." We think that the significance of the word is to distinguish "direct" participation from other bases of liability, such as grossly negligent supervision or deliberate indifference to a victim's rights. It does not foreclose the liability of a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be "indirect"— such as ordering or helping others to do the unlawful acts, rather than doing them him—or herself. *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

If Plaintiffs fail to prove any one of these required elements, your verdict must be for the Defendant officers on this claim.

# UNLAWFUL SEIZURE OF TESLA

# (FOURTH AMENDMENT – § 1983)

## *Against Officer Javier Algarin*

### A. Overview

The Fourth Amendment protects individuals against *unreasonable* seizures of their property. A "seizure" of property occurs when a government official meaningfully interferes with an individual's possessory interest in that property.

~~Courts have held that the intentional killing of a companion animal by a police officer constitutes a "seizure" of personal property under the Fourth Amendment.~~

Plaintiffs Charles and Leona Dempsey allege that Officer Algarin intentionally shot Tesla, their dog, resulting in her death while present in their fenced backyard, and that the shooting was an unreasonable seizure.

## B. What Plaintiffs Must Prove

To prevail on this claim, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. Tesla was Plaintiffs' property. This factor is not in dispute so you may consider that it has been established.

2. Officer Algarin intentionally fired the shot(s). This factor is not in dispute so you may consider that it has been established.

3. The shooting constituted a "seizure" of Tesla.

4. The seizure was objectively *unreasonable* under the Fourth Amendment.

## C. What Makes a Seizure of a Dog "Unreasonable"

A person "seizes" the property of a plaintiff when the person takes possession of or controls the property in a manner that meaningfully interferes with the plaintiff's right to possess and control the property. The reasonableness of a dog-seizure is determined by balancing:

- the nature and quality of the intrusion on the plaintiff's Fourth Amendment rights, with

- the government's interests in safety or law enforcement.

Courts have decided that when an officer kills a pet dog, the officer has meaningfully interfered with an owner's possessory right. To determine whether the seizure of Tesla was *objectively reasonable* you must consider the "totality of the circumstances" from the perspective of a reasonable officer at the scene and determine whether all the given factors and circumstances at the time of the shooting justified the seizure.[2]

## D. Intent

Plaintiffs need not prove that Officer Algarin intended to violate Plaintiffs' Fourth Amendment rights. Plaintiffs also need *not* prove malice, hatred, or intent to harm Plaintiffs personally.

---

[2] Strong argues that Perrone's unlawful entry in to his residence renders his seizure of Sheba unlawful.[2] ECF No. 28 at 4–9. The Supreme Court has held that a separate Fourth Amendment violation may not be used "to manufacture a[ seizure] claim where one would not otherwise exist." *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017) (rejecting Ninth Circuit's "provocation rule," which "instruct[ed] the court to ask whether the law enforcement officer violated the Fourth Amendment in some other way in the course of events leading up to the seizure"). "[T]he objective reasonableness analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional." *Id.* at 1547. In other words, the reasonableness of Perrone's allegedly unlawful "search" may not be considered when evaluating the reasonableness of Perrone's allegedly unlawful "seizure." *See Williams v. Voss*, No. 10-CV-2092, 2011 WL 4340851, at *5 (D. Minn. Sept. 15, 2011) (rejecting argument that failure to knock and announce should be considered in calculus of reasonableness of seizing a dog). Strong v. Perrone, No. 17-CV-6183-FPG, 2020 WL 1445877, at *3 (W.D.N.Y. Mar. 25, 2020)

### E. If You Find All Elements Proven

If Plaintiffs prove that:

- Tesla was their property. This factor is not in dispute so you may consider that it has been established.

- Officer Algarin intentionally shot her. This factor is not in dispute so you may consider that it has been established.

- the shooting was a seizure, and

- the seizure was *objectively unreasonable,*

you must find for Plaintiffs on this claim.

If Plaintiffs fail to prove any element, you must find for Officer Algarin.

## UNLAWFUL SEIZURE OF CHARLES DEMPSEY

## (FOURTH AMENDMENT – § 1983)

### *Against Officer Javier Algarin*

### A. Overview

Plaintiff Charles Dempsey claims that Defendant Officer Algarin violated his Fourth Amendment right to be protected from an unreasonable seizure of himself. Plaintiff Charles Dempsey claims that Officer Algarin pointed a firearm and pepper spray at him and those actions violated Plaintiff Charles Dempsey's constitutional rights.

### B. What Plaintiffs Must Prove

To establish that Officer Algarin unlawfully seized Charles Dempsey, Plaintiffs must prove each of the following by a preponderance of the evidence:

1.    First, the defendant seized the plaintiff's person;

2.    Second, in seizing the plaintiff's person, the defendant acted intentionally; and

3.    Third, the seizure was unreasonable.

## C. Definition of a Seizure

The Fourth Amendment protects individuals against unreasonable seizures of their person.

A seizure occurs when an officer, through physical force or a show of authority, restrains a person's liberty such that a reasonable person would not feel free to disregard the police and go about his business.

A temporary detention of an individual—even brief and limited—is a seizure.

## D. Factors Identifying a Show-of-Authority Seizure

In determining whether a reasonable person in the plaintiff's position would have felt free to leave, you must consider the "totality of the circumstances" from the perspective of a reasonable person in Mr. Dempsey's position.

An encounter with the police may become so circumstantially coercive that it amounts to a seizure.

## E. Intent

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, Plaintiffs must

prove Officer Algarin intentionally seized Mr. Dempsey. It is not enough to prove that Officer Algarin negligently or accidentally seized Mr. Dempsey. But while Plaintiffs must prove that Officer Algarin intended to act, Plaintiffs need not prove that Officer Algarin intended to violate Charles Dempsey's Fourth Amendment rights.

## F. If Plaintiffs Prove All Elements

If Plaintiffs prove all three elements I stated to you, your verdict must be for Charles Dempsey on this claim.

If Plaintiffs fail to prove any element, your verdict must be for Officer Algarin.

# FAILURE TO INTERVENE

# (FOURTH AMENDMENT – § 1983)

## *Against Officer Adam Gorman Only*

---

## A. Overview

This claim is limited to Defendant Officer Gorman's alleged failure-to-intervene as to Officer Algarin's unlawful search of the Dempsey's curtilage. Therefore, you may consider this claim only as it relates to Officer Gorman's alleged failure to intervene to prevent Officer Algarin from unlawfully searching Plaintiffs' curtilage.

Law enforcement officers have an affirmative duty to intervene to prevent fellow officers from violating a person's constitutional rights when they are present and have a realistic opportunity to do so.

---

## B. What Plaintiffs Must Prove

To prevail on this claim, Plaintiffs must prove the following by a preponderance of the evidence:

1. An underlying constitutional violation; that Officer Algarin's search of the curtilage was unreasonable under the Fourth Amendment, as defined in the separate instruction.

2. A Reasonable Officer Would Have Known a Violation Was Occurring; Plaintiffs must prove that Officer Gorman knew that Officer Algarin was unreasonably searching or was about to unreasonably search the Dempseys' curtilage.

3. Realistic Opportunity to Intervene; That Officer Gorman had a realistic opportunity to stop Officer Algarin from unlawfully searching the Dempsey's curtilage, that is, that he had sufficient time to intercede and a capability to prevent the harm.

4. Failure to Act; That Officer Gorman did not take reasonable steps to prevent the harm from occurring; and

5. That Defendant Officer Gorman's failure to act caused Plaintiffs to suffer harm.

If Plaintiffs prove all five elements by a preponderance of the evidence, the verdict must be for Plaintiffs on this claim.

If Plaintiffs fail to prove any one of the elements by a preponderance of the evidence, then your verdict must be for Officer Gorman.

## MUNICIPAL LIABILITY – POLICY OF UNLAWFUL SEARCH ("BACKTRACKING")

## (§ 1983 – FOURTH AMENDMENT – WARRANTLESS ENTRY INTO THE CURTILAGE)

### *Against the City of Rochester*

---

### A. Theory 1: Unlawful Policy, Practice or Custom

Plaintiffs Charles and Leona Dempsey claim that the City of Rochester is liable under federal law because the Rochester Police Department maintained a policy, custom, or practice allowing entry of the curtilage of a single-family residence for the purpose of searching for discarded evidence, weapons, or contraband without consent, or without a search warrant, or without probable cause and exigent circumstances. Plaintiffs claim that this City policy, custom, or practice caused Officer Algarin's warrantless search of the curtilage of their home.

Municipal liability under § 1983 is sometimes called "*Monell* liability," after the Supreme Court case that recognized it. A City is not automatically liable for every unconstitutional act committed by one of its officers. The City is liable *only* if Plaintiffs prove that the constitutional violation was *caused* by a City policy, custom, or practice.

---

If you find the City maintained an unlawful unwritten policy of requiring or permitting its officers to enter the curtilage of a single-family residence to search without needing a warrant, or consent, or probable cause and exigent circumstances, then you must find that the City had a policy, custom, or practice for purposes of § 1983. **OR**

If you find the City maintained a persistent and widespread practice of authorizing or tolerating warrantless entries into curtilage of a single-family residence to search—without needing a warrant, or consent, or probable cause and exigent circumstances—then you must find that the City had a policy, custom, or practice for purposes of § 1983. **OR**

If you find the single incident of Officer Algarin backtracking into the Dempseys' yard occurred because of a City policy or a widespread City practice of authorizing or tolerating warrantless entries into curtilage of a single-family residence to search—without a warrant, or consent, or probable cause and exigent circumstances—then you must find that the City had a policy, custom, or practice for purposes of § 1983.

## B. What Plaintiffs Must Prove

To succeed on this municipal liability claim against the City of Rochester, Plaintiffs must prove by a preponderance of the evidence all of the following:

1.    A Fourth Amendment violation: that Officer Algarin, or Officer Gorman, or both searched the curtilage of Plaintiffs' home without a warrant and without consent, and without probable cause and exigent circumstances.

2. A City policy/custom/practice: that the City had an official policy, custom, or practice that resulted in warrantless searches of curtilage in circumstances like those presented in this case; and

3. Causation ("moving force"): that the City's policy, custom, or practice *was* the moving force behind Officer Algarin's or Officer Gorman's unconstitutional search—that is, the policy, custom, or practice directly caused the search.

If Plaintiffs prove all three elements, your verdict must be for Plaintiffs on this claim. If Plaintiffs fail to prove any one of these elements, your verdict must be for the City.

## ~~D.~~ C. What Constitutes a City Policy, Custom, or Practice

A City may be liable under § 1983 if Plaintiffs prove that the constitutional violation was caused by:

1. A formal policy officially adopted by the City; *or*

2. A practice or custom that is so persistent, widespread, and well-settled that it has the force of law; *or*

3. A decision or action attributable to the City, meaning that the challenged conduct was caused by the City's own choices, including its training, supervision, or tolerance of a practice that results in constitutional violations.

A practice may constitute a City custom if it is common and repeated, is tolerated or not stopped by supervisors, and reflects how officers are trained or expected to act. A single incident can support City liability if Plaintiffs prove it occurred because of a City policy or a widespread City practice that effectively authorized the conduct.

You do not need to find that a particular named individual policymaker personally made the policy choice. The question is whether

the policy, custom, or practice was attributable to the City itself and caused the constitutional violation.

---

**E. Theory 2:** The Second Circuit has identified four requirements for demonstrating that a municipality's failure to train amounted to deliberate indifference. First, the municipal policymaker must know to a moral certainty that employees will confront a given situation. Second, the situation must either present employees with the type of difficult choices . . . that training or supervision would make less difficult, or employees must have a history of mishandling the situation. Third, the wrong choice by employees must frequently cause the deprivation of a citizen's constitutional rights. And fourth plaintiffs must identify a specific deficiency in the municipality's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.[3]

---

[3] This language was taken from Judge Wolford's decision and order on Defs.' motion for summary judgment and Pls.' partial motion for summary judgment (ECF No. 104 at 23-24.)

*Dempsey et al. v. City of Rochester, et al.*, No. 19-CV-6780-MJP          48 of 78

**What Plaintiffs Must Prove**

To succeed on this municipal liability claim against the City of Rochester, Plaintiffs must prove by a preponderance of the evidence all of the following:

1. A Fourth Amendment violation: that Officer Algarin, or Officer Gorman, or both searched the curtilage of Plaintiffs' home without a warrant and without consent, and without probable cause and exigent circumstances.

2. That the City's failure to train amounted to deliberate indifference; and

3. Causation ("moving force"): that the City's failure to train *was* the moving force behind Officer Algarin's or Officer Gorman's unconstitutional search—that is, the failure to train directly caused the search.

If Plaintiffs prove all three elements, your verdict must be for Plaintiffs on this claim. If Plaintiffs fail to prove any one of these elements, your verdict must be for the City.

# MUNICIPAL LIABILITY – UNCONSTITUTIONAL SEIZURE OF PLAINTIFFS' DOG (TESLA)

## (§ 1983 – FOURTH AMENDMENT – UNREASONABLE SEIZURE)
### Against the City of Rochester

---

A. Unlawful Policy, Practice, or Custom

Plaintiffs Charles and Leona Dempsey claim that the City of Rochester is liable under federal law because the Rochester Police Department maintained a policy, custom, or practice permitting officers to use lethal force against household dogs during police encounters without first attempting non-lethal alternatives, and without any objectively reasonable basis for concluding that the dog posed an imminent threat of serious bodily harm. Plaintiffs claim that this City policy, custom, or practice caused Officer Algarin's unreasonable seizure of their dog, Tesla.

Municipal liability under § 1983 is sometimes called "Monell liability," after the Supreme Court case that recognized it. A City is not automatically liable for every unconstitutional act committed by one of its officers. The City is liable only if Plaintiffs prove that the constitutional violation was caused by a City policy, custom, or practice.

If you find the City maintained an unlawful unwritten policy of requiring or permitting unreasonable seizures of dogs seizures encountered during police operations, requiring or permitting its officers to use lethal force against dogs encountered during police operations without first assessing the actual threat posed by the dog ~~and without attempting non-lethal alternatives~~, then you must find that the City had a policy, custom, or practice for purposes of § 1983. OR

If you find the City maintained a persistent and widespread practice of authorizing or tolerating the seizing of dogs during police encounters—without requiring officers to assess the actual threat level ~~or attempt non-lethal methods of control~~—then you must find that the City had a policy, custom, or practice for purposes of § 1983. OR

If you find the single incident of Officer Algarin seizing ~~shooting~~ Tesla occurred because of a City policy or a widespread City practice of authorizing or tolerating the use of lethal force against dogs without requiring an objective assessment of threat ~~or attempt at non-lethal alternatives~~, then you must find that the City had a policy, custom, or practice for purposes of § 1983.

B. What Plaintiffs Must Prove (Custom/Policy Theory)

To succeed on this municipal liability claim against the City of Rochester under a policy, custom, or practice theory, Plaintiffs must prove by a preponderance of the evidence all of the following:

1. A Fourth Amendment violation: that Officer Algarin unreasonably seized Plaintiffs' dog, Tesla, by using lethal force without an objectively reasonable basis for believing that Tesla posed an imminent threat of ~~serious~~ bodily harm, ~~and without first attempting non-lethal alternatives~~.

2. A City policy/custom/practice: that the City had an official policy, custom, or practice that resulted in officers seizing ~~using lethal force against~~ dogs in circumstances like those presented in this case—that is, without requiring an objective threat assessment ~~or non-lethal alternatives~~; and

3. Causation ("moving force"): that the City's policy, custom, or practice was the moving force behind Officer Algarin's unconstitutional seizure of Tesla—that is, the policy, custom, or practice directly caused the shooting.

If Plaintiffs prove all three elements, your verdict must be for Plaintiffs on this claim. If Plaintiffs fail to prove any one of these elements, your verdict must be for the City.

C. What Constitutes a City Policy, Custom, or Practice

A City may be liable under § 1983 if Plaintiffs prove that the constitutional violation was caused by:

1. A formal policy officially adopted by the City; or

2. A practice or custom that is so persistent, widespread, and well-settled that it has the force of law; or

3. A decision or action attributable to the City, meaning that the challenged conduct was caused by the City's own choices, including its training, supervision, or tolerance of a practice that results in constitutional violations.

A practice may constitute a City custom if it is common and repeated, is tolerated or not stopped by supervisors, and reflects how officers are trained or expected to act. A single incident can support City liability if Plaintiffs prove it occurred because of a City policy or a widespread City practice that effectively authorized the conduct.
You do not need to find that a particular named individual policymaker personally made the policy choice. The question is whether the policy, custom, or practice was attributable to the City itself and caused the constitutional violation.

## D. Theory 2: Failure to Train

Plaintiffs alternatively or additionally claim that the City of Rochester is liable because its failure to train Rochester Police Department officers on dog encounters amounted to deliberate indifference to constitutional rights.

The Second Circuit has identified four requirements for demonstrating that a municipality's failure to train amounted to deliberate indifference:

The Second Circuit has identified four requirements for demonstrating that a municipality's failure to train amounted to deliberate indifference. First, the municipal policymaker must know to a moral certainty that employees will confront a given situation. Second, the situation must either present employees with the type of difficult choices . . . that training or supervision would make less difficult, or employees must have a history of mishandling the situation. Third, the wrong choice by employees must frequently cause the deprivation of a citizen's constitutional rights. And fourth, plaintiffs must identify a specific deficiency in the municipality's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.

E. What Plaintiffs Must Prove (Failure to Train Theory)

To succeed on their municipal liability claim against the City of Rochester under a failure-to-train theory, Plaintiffs must prove by a preponderance of the evidence all of the following:

1. A Fourth Amendment violation: that Officer Algarin unreasonably seized Plaintiffs' dog, Tesla, by using lethal force without an objectively reasonable basis for believing that Tesla posed an imminent threat of bodily harm.

2. Deliberate indifference: that the City's failure to train its officers on dog encounters amounted to deliberate indifference to constitutional rights. Plaintiffs may prove deliberate indifference by showing:

• There was a pattern of similar constitutional violations (i.e., unreasonable shootings of dogs) by Rochester Police Department officers, putting the City on actual or constructive notice that its failure to train was substantially certain to result in constitutional violations; OR

• The need for training on dog encounters was so obvious—and the inadequacy of existing training so likely to result in constitutional violations—that the City's failure to provide such training can fairly be said to represent deliberate indifference.

3. Moving force / Causation: that the City's failure to train was the moving force behind Officer Algarin's unconstitutional seizure of Tesla—meaning the constitutional violation occurred because of the training deficiency and would not have occurred absent it.

If you find that the City's failure to train officers on dog encounters—including threat assessment, de-escalation techniques, and non-lethal alternatives—caused Officer Algarin to shoot Tesla without an

objectively reasonable basis for believing Tesla posed an imminent threat of bodily harm, then this element is satisfied.

If Plaintiffs fail to prove any one of these elements, then your verdict must be for the City of Rochester.

# ASSAULT

## (NEW YORK LAW)

### *Against Officer Javier Algarin Only*

## A. Overview

Plaintiff Charles Dempsey asserts that Officer Algarin assaulted him by pointing a gun and pepper spray at him while shouting commands such as get back and get your dog.

## B. What Plaintiff Must Prove

To succeed on his assault claim against Officer Algarin, Charles Dempsey must prove each of the following elements by a preponderance of the evidence:

1. That Officer Algarin intentionally engaged in physical conduct;

2. That Officer Algarin's conduct placed Charles Dempsey in imminent apprehension of harmful physical contact; and

3. That a reasonable person in Charles Dempsey's position would have experienced such imminent apprehension.

## C. Intent

Plaintiff Charles Dempsey must prove that Officer Algarin intended to engage in the conduct—such as pointing the gun or pepper spray.

The law requires only that the defendant voluntarily performed the conduct, and that such conduct placed the plaintiff in imminent apprehension of harmful contact.

## D. If All Elements Are Proven

If Plaintiffs prove all required elements, you must return a verdict for Charles Dempsey on the assault claim.

If Plaintiffs fail to prove any required element, you must return a verdict for Officer Algarin.

## TRESPASS

## (NEW YORK LAW)

### *Against Officers Javier Algarin and Adam Gorman*

---

## A. Overview

Plaintiffs assert that Officer Algarin intentionally entered their curtilage without justification or permission. Plaintiffs further assert that Officer Gorman instructed Officer Algarin to enter Plaintiffs' curtilage without justification or permission.[4]

---

## B. What Plaintiffs Must Prove

To prevail on their trespass claim against Officers Algarin and Gorman, Plaintiffs must prove each of the following by a preponderance of the evidence:

1. That one or both officers entered onto Plaintiffs' property.

---

[4] **PJI 3:8 Intentional Torts—Interference with Person or Property—Trespass to Land**

A person who, without justification or permission, intentionally (goes, causes a (person, thing) to go) upon the property of another person commits what is known in the law as a trespass and is liable for any damages caused by that trespass. N.Y. Pattern Jury Instr.--Civil 3:8

2. That the officers intentionally made that entry;

   Intent means they meant to enter the property—Plaintiffs do not

   need to prove malice.

3. Entry into Plaintiffs' backyard was without justification or

   permission.

Physical damage is not required. The entry itself may constitute the

harm.

## C. INTENT

Intent involves the state of mind with which an act is done. If a

person acts voluntarily with the purpose of bringing about a certain

result, he is said to have intended that result. Further, although a person

does not act with the purpose of bringing about a result, if he acts under

circumstances known to him that makes it substantially certain that the

result will follow, the person is said to have intended that result.

## D. Privilege of Law Enforcement Officers

In New York State, law enforcement officers are justified in

entering a person's property if they do so for a valid law enforcement

purpose and "to perform their legal duties." As such, Plaintiffs must prove that officers were not acting pursuant to their law enforcement duties when they entered the yard.

## E. Determining Legal Justification

You must determine whether the officers' entry was legally justified. An entry is not privileged if:

- the officers lacked a warrant, and

- no consent or probable cause and exigent circumstances existed.

If the entry was unlawful under the Fourth Amendment, then it was not privileged under New York law, and you may find that a trespass occurred.

## F. Liability of a Defendant Who Did Not Physically Enter

Under New York law, an officer may be liable for trespass even if:

- he directed, commanded, encouraged, or materially participated in the trespass,

- or if he aided another officer in committing the trespass.

Therefore, if you find that Officer Gorman directed, encouraged, or facilitated Officer Algarin's entry—for example, by instructing him to "backtrack" into the yard—you may find Officer Gorman liable for trespass even if he did not physically enter the yard himself.

## G. If Plaintiffs Prove All Elements

If Plaintiffs prove all required elements against a <u>Defendant</u>, your verdict must be for Plaintiffs and against that defendant.

If Plaintiffs fail to prove any required element against a defendant, your verdict must be for that defendant.

## RESPONDEAT SUPERIOR

## (STATE LAW ASSAULT AND TRESPASS)

With respect to Plaintiffs' state law claims for assault and trespass, Charles and Leona Dempsey also seek to hold the City of Rochester responsible for the acts of Officers Algarin and Gorman.

Unlike the Monell claims I discussed earlier, under New York law, an employer may be held liable for the torts of its employees committed within the scope of their employment. In this case, the City concedes that it is responsible for the acts of Officers Algarin and Gorman with respect to Plaintiffs' state law assault and trespass claims.

Therefore, if you find that Plaintiffs have proven their state law assault claim or state law trespass claim against either Officer Algarin or Officer Gorman, then you must also find that Plaintiffs have proven that same claim against the City of Rochester.

## SEPARATE CONSIDERATION OF MULTIPLE PLAINTIFFS AND DEFENDANTS AND SEPARATE CLAIMS

In this case, there are two plaintiffs (Charles and Leona Dempsey) and three defendants (Officer Javier Algarin, Officer Adam Gorman, and the City of Rochester). The Dempseys have multiple claims against Officer Algarin, Officer Gorman, and the City of Rochester.

You must separately consider each claim and each party involved in each claim.

Each claim must be proven for each plaintiff bringing that claim regarding each defendant that claim applies to.

You may not find in favor of one plaintiff solely or partially because you found in favor of the other plaintiff on the same claim. These same principles apply to Defendants. Your findings in favor of a Defendant do not impact whether you find in favor of another Defendant. For example, just because Officer Jones used excessive force does not mean that Officer Smith did.

These same principles apply to the claims in this case. You may not find in favor of a Plaintiff on one claim simply because you found in that

Plaintiff's favor on a separate claim. As an example, you may not consider the fact that Officer Johnson unlawfully arrested Plaintiff when deciding whether Officer Johnson used excessive force.

Plaintiffs must also prove by a preponderance of the evidence that Officer Algarin and Officer Gorman were personally involved in the conduct that Plaintiffs complain about. You may not hold each or either Defendant liable for what others did or did not do.

You must give separate consideration to each claim and each party in this case. Although there are three defendants, it does not follow that if one is liable, any of the others is also liable. Likewise, although there are two plaintiffs, it does not follow that if one is successful, the other is, too.

*Dempsey et al. v. City of Rochester, et al.*, No. 19-CV-6780-MJP        63 of 78

**Expert Witnesses**

PJI 1:90 General Instruction—Expert Witness

You will recall that Dr. Brigid Vilardo Lyons, Ph.D. and Dr. Allison T. Prince, Psy.D. testified concerning their qualifications in the fields of psychology and James W. Crosby, Ph.D. testified concerning his qualifications regarding police practices and law enforcement training on interactions with dogs, and each expert gave his or her opinions concerning issues in this case. When a case involves a matter of science or art or requires special knowledge or skill that most people do not have, a qualified witness is permitted to state his or her opinion for the information of the court and jury. The opinions stated by Dr. Lyons, Dr. Prince, and Dr. Crosby were based on particular facts, as they obtained knowledge of them and testified about them or as the attorneys who questioned them asked them to assume. You may reject any opinion if you find the facts to be different from the facts that formed the basis for the opinion. You may also reject an opinion if, after careful consideration of all the evidence in the case, including the cross-examination of Dr. Lyons, Dr. Prince, and Dr. Crosby you decide that an opinion is not convincing. In other words, you are not required to accept any opinion to

the exclusion of the facts and circumstances disclosed by other evidence.

Opinion testimony should be evaluated in the same way as the testimony

of any other witness. It is given to assist you in reaching a proper

conclusion; it is entitled to such weight as you find the witness's

qualifications in the field warrant and must be considered by you, but is

not controlling upon your judgment.

## DAMAGES GENERALLY

---

If you find that Plaintiffs have proven any claim against any Defendant by a preponderance of the evidence, then you must consider the issue of damages. The fact that I am giving you instructions on damages should *not* be considered as an indication of any view of mine on what your verdict should be. Rather, these instructions are given only so that you will have them if you should find in favor of Plaintiffs on the question of liability.

There are two types of damages that you may consider: compensatory damages and punitive damages. I will discuss each of these in turn.

## COMPENSATORY DAMAGES

If you find for either Plaintiff on the issue of liability for any of their claims under federal or state law, then you must award compensatory damages, that is, a sum of money that you believe will fairly and reasonably compensate each Plaintiff for any injury you find that Plaintiff actually sustained as a direct consequence of any of the Defendants' unlawful conduct.

Under federal law, compensatory damages are intended to fairly and reasonably compensate Plaintiffs for the actual injuries you find were proximately caused by the constitutional violation. Plaintiffs may recover damages for the natural and reasonably foreseeable consequences of the constitutional violation.

Similarly, under New York law, compensatory damages are intended to fairly and reasonably compensate Plaintiffs for the injuries you find were proximately caused by any of the Defendants' wrongful conduct. A defendant is responsible for the natural and reasonably foreseeable consequences of that wrongful conduct. You may award compensatory damages only for those injuries that you find Plaintiffs

have proven by a preponderance of the evidence. Moreover, you may award compensatory damages only for those injuries that you find Plaintiffs have proven by a preponderance of the evidence to have been proximately caused by the Defendant's unlawful conduct. That is, you may not award compensatory damages for any injury suffered by Plaintiffs from any other cause. There can be more than one cause of an injury. To find that Defendant's act caused Plaintiffs' injury, you need not find that Defendant's act was the nearest cause, either in time or space. However, if Plaintiffs' injury was caused by a later, independent event that intervened between Defendant's act and Plaintiffs' injury, Defendant is not [responsible for any damages] liable[5] unless the injury was reasonably foreseeable by Defendant.

A defendant is responsible for all injuries that are the natural and foreseeable consequence of the unlawful conduct and for any aggravation of a pre-existing emotional or psychological condition, if proven, even if a typical person would have suffered less. If you find that before this incident Plaintiffs had a certain health condition or conditions and

---

[5] If there is a superseding intervening cause, the jury won't get to damages. Why use "liability" language here?

further find that because of the incident this condition was or these conditions were aggravated to cause increased suffering and disability, then Plaintiffs are entitled to recover for any increased disability or pain resulting from such aggravation. Plaintiffs are not, however, entitled to recover for any psychological ailment or disability which existed prior to the incident or for any injuries from which Plaintiffs may now be suffering which were not caused or contributed to by the incident. Plaintiffs can recover only for damage caused by aggravation of the pre-existing condition, not the pre-existing condition itself. Plaintiffs should be compensated only to the extent that you find their condition was made worse by Defendants' acts.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence, and the reasonable inferences you draw from that evidence.

In determining damages for emotional or psychological injury, no physical injury is required. A plaintiff may recover damages for emotional distress actually caused by the constitutional violation. There is no exact standard for setting damages for emotional distress or

psychological injury. I cannot give you a precise formula for determining the dollar value of pain, suffering, or emotional harm. You must use your judgment, common sense, and experience to determine an amount that will fairly and reasonably compensate each successful Plaintiff, based on the evidence you have heard.

**Specific Compensatory Damages**

Compensatory damages may include, to the extent proven: Emotional distress, including fear, fright, shock, trauma, anxiety, depression, grief, humiliation, indignity, anger, irritability, loss of a sense of safety; panic attacks; flashbacks; intrusive recollections; sleep disturbance; mental anguish; post-traumatic stress disorder (PTSD); physical consequences resulting from emotional distress; loss of enjoyment of life; future medical and psychological treatment costs and expenses, including but not limited to counseling, crisis stabilization, therapy, psychiatric care, medication, hospitalization, outpatient treatment, or inpatient treatment; interference with Plaintiffs' use and enjoyment of their home; the loss of Tesla's companionship and protective value; economic loss, including the "intrinsic value" of the dog, and loss of wages.

If you find that some of a Plaintiffs' damages were caused by one or more of the Defendants' unlawful conduct and some were caused by other factors, you should apportion damages only if you find that the evidence permits you to make a fair and reasonable separation. If you find that the injuries are indivisible, or that you cannot reasonably separate the harm caused by the unlawful conduct from other causes, then the Defendant is responsible for the entire injury. *Ravo v. Rogatnick*, 70 N.Y.2d 305, 310–11 (1987).

If you find that the Defendants' unlawful conduct caused or substantially contributed to an initial psychological injury or impairment, such as PTSD, then you may also award damages for later injuries or traumas that you find were more likely than not a consequence of that initial injury or impairment. This includes later harms that occurred because the original injury impaired the Plaintiff's ability to cope or function, rendered the Plaintiff more susceptible to later trauma, or set in motion a chain of events that probably would not have occurred had the Plaintiff not been injured. McCahill, 201 N.Y. at 224–25; Steinhauser, 421 F.2d at 1171–72.

The court instructs you that the Defendants cannot contend that Plaintiffs' PTSD was not caused by the October 19, 2018 incident. The only evidence adduced at trial is that both Plaintiffs were diagnosed with PTSD as a result of that incident.

Additionally, the Defendants cannot contend that Plaintiffs' PTSD or other emotional and psychological harms were not a foreseeable consequence of the October 19, 2018 incident. It is no defense that the plaintiff was more susceptible to injury than another person, or that Plaintiffs' injuries were difficult to cure.

The Court instructs that whenever the word "cause" appears in these instructions relating to the subject of damages, it means the same as precipitate or trigger.

### Damages, Obligation to Mitigate

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate his/her damages, that is, to avoid or to minimize those damages.

If you find the defendant is liable and that either/both plaintiffs have suffered damages, the plaintiffs may not recover for any item of damage which he or she could have avoided through reasonable effort. The law's "notions of fair compensation to an injured plaintiff do not include wounds which in a practical sense are self-inflicted." If you find that the defendants proved by a preponderance of the evidence that the plaintiff unreasonably failed to take advantage of any opportunity to lessen his damages, you should deny that Plaintiff recovery for those damages that he/she would have avoided had he/she taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendants have the burden of proving the damages that the plaintiffs could have mitigated. In deciding whether to reduce the plaintiffs' damages because of a failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has

satisfied his burden of proving that the plaintiff's conduct was not reasonable.

With respect to minors, you must consider the age, intelligence, maturity, and experience of the minor in determining their capacity to mitigate their damages. Because plaintiffs' must only make reasonable efforts to mitigate damages, a minor's duty to mitigate is generally less than that of adults.

If you find Defendants liable, Plaintiffs have a duty to mitigate damages.

## ~~Nominal Damages[6]~~

---

[6] There is one part of the supplemental instruction, however, that was erroneous though not mentioned in plaintiffs' objection. Indeed, the same error was made in the court's original instructions, and was unobjected-to at that time as well. If a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages, the plaintiff is entitled to an award of at least nominal damages as a matter of law. *See, e.g., Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 431 (2d Cir.1995), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996); *Gibeau v. Nellis,* 18 F.3d 107, 110 (2d Cir.1994); *McKenna v. Peekskill Housing Authority,* 647 F.2d 332, 335–36 (2d Cir.1981). The jury should be so instructed, and we have held that it is plain error to instruct the jury merely that, having found a violation, it "may" award nominal damages. *See, e.g., LeBlanc–Sternberg v. Fletcher,* 67 F.3d at 431; *Gibeau v. Nellis,* 18 F.3d at 110–11. *See also Abou–Khadra v. Mahshie,* 4 F.3d 1071, 1078 (2d Cir.1993); *Air et Chaleur, S.A. v. Janeway,* 757 F.2d 489, 494 (2d Cir.1985) (unobjected-to instruction is unreviewable, *see* Fed.R.Civ.P. 51, except for plain error). *Robinson v. Cattaraugus Cnty.*, 147 F.3d 153, 162 (2d Cir. 1998).

If you return a verdict for Plaintiffs, but Plaintiffs have failed to prove compensatory damages, then you must award nominal damages of $1.00.

# PUNITIVE DAMAGES

# (ALGARIN AND GORMAN ONLY)

---

If you find that Plaintiffs have proven liability against Officer Javier Algarin or Officer Adam Gorman on any § 1983 claim, you must then decide whether Plaintiffs have also proven that punitive damages should be awarded against that officer. Punitive damages may be awarded only against individual defendants, not against the City of Rochester.

## A. Purpose of Punitive Damages

Punitive damages are not intended to compensate Plaintiffs. Instead, punitive damages are intended to punish a defendant for conduct that is particularly blameworthy and to deter that defendant and others from engaging in similar misconduct in the future.

## B. When Punitive Damages May Be Awarded

You may award punitive damages against an individual defendant *only* if Plaintiffs prove by a preponderance of the evidence that the defendant's conduct was:

• motivated by evil motive or intent, or

• involved willful or reckless indifference to Plaintiffs' federally protected rights.

"Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

## C. Definitions

• Evil motive or intent means conduct done with ill will, spite, or an intent to harm.

• Reckless or callous indifference means that the defendant knew, or should have known, that his conduct created a substantial risk of violating Plaintiffs' federally protected rights, and he consciously disregarded that risk.

## D. Application to This Case

Plaintiffs claim that Officers Algarin and Gorman acted with reckless or callous indifference to Plaintiffs' federally protected rights when Officer Algarin entered the Dempsey curtilage without a warrant, or without consent, or without probable cause plus exigent

circumstances, and when the officers engaged in related conduct during that incident.

Plaintiffs claim that Officer Algarin knew that he did not have probable cause or an emergency, and that he had the time and opportunity to seek Mr. Dempsey's consent prior to entering his curtilage, but that Officer Algarin chose not to seek Mr. Dempsey's consent, and recklessly entered his backyard anyways, knowing this would violate Plaintiffs' Fourth Amendment Rights. A person acts recklessly, in the most common formulation, when he "consciously disregards a substantial and unjustifiable risk" attached to his conduct, in "gross deviation" from accepted standards.

If you find that either Officer Algarin or Officer Gorman is liable for a constitutional violation, you *may* consider whether the violation was committed with the required state of mind for punitive damages. In making that decision, you may consider all the circumstances, including the nature of the officer's conduct, the degree of risk that the conduct would violate constitutional rights, and whether the conduct involved deliberate or reckless disregard of those rights.

## D. Amount of Punitive Damages

If you decide to award punitive damages, the amount is within your sound discretion. The amount should be reasonable and proportionate to the seriousness of the defendant's misconduct and sufficient to accomplish the purposes of punishment and deterrence.

## E. Relationship to Compensatory Damages

If you award punitive damages, they are awarded in addition to any compensatory damages you award.

[Verdict sheet]

[Deliberation process]

[Foreman's duties]

[Questions in written form]

[Sidebar for any objections or additions from the attorneys]

[Swear in the officer who will protect the jury]

[Tell them lunch will be provided]