UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARIANNE ANNISZKIEWICZ,

Plaintiff,

- against -

THE CITY OF ROCHESTER, a municipal entity,
POLICE OFFICER BRIAN CALA, SERGEANT
JENNIFER TRENTON

Defendants.

**Case No.: 20-cv-6629-GWC-CDH**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT CITY OF ROCHESTER
FROM RELITIGATING *MONELL* LIABILITY BASED ON THE
*DEMPSEY v. CITY OF ROCHESTER* JURY VERDICT**

Elliot Dolby Shields
Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................ii

ARGUMENT ........................................................................................................................ 1

I. JUDGE HOLLAND'S RULING IN PRESTON CONFIRMS THAT COLLATERAL ESTOPPEL APPLIES TO BOTH MONELL THEORIES IN THIS CASE............................... 1

II. THE DEMPSEY JURY VERDICT SATISFIES EVERY ELEMENT OF OFFENSIVE COLLATERAL ESTOPPEL ................................................................................................ 2

    A. The Dempsey Jury Instructions Properly Addressed Municipal Liability for Unconstitutional Seizures. ............................................................................................ 2

    B. Defendants Misapprehend the *Monell* Theories Decided in Dempsey........................... 3

    C. The Deliberate Indifference Issues Are Identical. ........................................................ 5

    D. Application of Collateral Estoppel Is Not Unfair. ........................................................ 6

        1. The Cox Summary Judgment Ruling Is Not an Inconsistent Prior Judgment. ........... 6

        2. Collateral Estoppel Applies in § 1983 Cases Against Municipalities. ...................... 7

        3. The Dempsey Jury Instructions Do Not Create Unfairness, Nor Do They Undermine Judicial Economy.............................................................................................................. 8

    E. Plaintiff Seeks to Preclude Discrete Issues, Not an Entire Cause of Action. ................. 9

CONCLUSION..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*, 449 U.S. 90 (1980) ............................................................................................. 8

*Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74 (2d Cir. 2019) ................................................. 4, 5

*Camreta v. Greene*, 563 U.S. 692 (2011) ....................................................................................... 7

*Carroll v. Cnty. of Monroe*, 712 F.3d 649 (2d Cir. 2013) ........................................................ 2, 9

*City of Canton v. Harris*, 489 U.S. 378 (1989) .............................................................................. 9

*Cousik v. City & County of Denver*, No. 22-cv-01213-NYW-KAS, 2024 WL 4929272 (D. Colo. Dec. 2, 2024) ........................................................................................................................... 4, 7, 10

*Cox v. City of Rochester*, No. 22-cv-6207-FPG, 2025 WL 50340 (W.D.N.Y. Jan. 8, 2025) ..... 6, 7

*DeCastro v. City of New York*, 278 F. Supp. 3d 753 (S.D.N.Y. 2017) .......................................... 8

*Dempsey v. City of Rochester*, 761 F. Supp. 3d 607 (W.D.N.Y. 2025) ......................................... 9

*Dempsey v. City of Rochester*, 2025 WL 1132847 (W.D.N.Y. Apr. 16, 2025) ......................... 6, 9

*Domeneck v. City of New York*, 2019 WL 5727409 (S.D.N.Y. 2019) ........................................ 7, 8

*Ellis v. Washington*, 409 F. Supp. 3d 148 (W.D.N.Y. 2019) ......................................................... 9

*Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26 (2d Cir. 2005) ....................................... 9

*Green v. Kadilac Mortgage Bankers, Ltd.*, 936 F. Supp. 108 (S.D.N.Y. 1996) ........................ 7, 8

*Kluppelberg v. Burge*, 276 F. Supp. 3d 773 (N.D. Ill. 2017) ................................................... 5, 10

*McGaffigan v. City of Rochester*, 342 F.R.D. 41 (W.D.N.Y. 2022) ............................................... 3

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ................................................................... 6

*Proctor v. LeClaire*, 715 F.3d 402 ................................................................................................. 5

*Shot v. Town of Irondequoit*, No. 25-CV-06333-FPG, 2026 WL 395113 (W.D.N.Y. Feb. 12, 2026) .............................................................................................................................................. 3

*United States v. Mendoza*, 464 U.S. 154 (1984) ......................................................................... 7, 8

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) .............................................................. 9

**Statutes**

42 U.S.C. § 1983 ............................................................................................................................... 8

**ARGUMENT**

**I.      JUDGE HOLLAND'S RULING IN PRESTON CONFIRMS THAT COLLATERAL ESTOPPEL APPLIES TO BOTH MONELL THEORIES IN THIS CASE.**

Defendants are estopped from relitigating both theories of municipal liability: (1) policy, practice and custom and (2) deliberate indifference under a failure to train theory. On March 26, 2026, in *Preston v. City of Rochester*, 22-CV-06525-CDH (W.D.N.Y.), the Honorable Colleen D. Holland granted Plaintiff's motion for collateral estoppel on the policy, custom, and practice theory—the identical theory at issue here. (*See* Ex. 1 to Shields Decl., Judge Holland Denial of Bifurcation in *Dempsey*, *Gursslin*, *McGill*, and *Preston*; and Ex. 2, *Preston* Text Order, ECF 108). Judge Holland denied collateral estoppel on the failure to train theory—but only because the RPD held a roll call training on dog encounters in 2019, after the *Dempsey* incident (October 2018) and before the Preston incident (February 2020). Because the *Anniszkiewicz* incident occurred in June 2018—four months *before* the Dempsey incident—this Court should grant collateral estoppel on both theories of municipal liability that were decided against the City in *Dempsey*.

In *Preston*, the Court declined to estop on the failure-to-train claim solely because the RPD's December 2019 roll call training post-dated the *Dempsey* incident and pre-dated the *Preston* incident (February 2020), meaning a *Preston* jury would have before it training evidence that the *Dempsey* jury never considered. (*See* Ex. 2 to the Shields Reply Decl.) That concern is absent in this case. The Anniszkiewicz incident occurred on June 10, 2018—four months before *Dempsey* and eighteen months before the December 2019 roll call training. There is no post-*Dempsey* training evidence for a jury here to weigh, because no such training existed at the time of the incident. The factual record on the training issue is identical to *Dempsey*, and collateral estoppel applies with full force to both the policy, custom, and practice claim and the failure-to-train claim.[1]

---

[1] When Judge Holland issues the written order in *Preston*, Plaintiff will supplement this filing with the written order.

**II.  THE *DEMPSEY* JURY VERDICT SATISFIES EVERY ELEMENT OF OFFENSIVE COLLATERAL ESTOPPEL**

**A. The *Dempsey* Jury Instructions Properly Addressed Municipal Liability for Unconstitutional Seizures.**

Defendants argue that the *Dempsey* jury instructions "repeatedly conflated excessive force and unlawful seizure" and therefore the jury did not actually decide municipal liability for unconstitutional seizures. (Opp. at 3–6.) This argument is meritless.

First, the constitutional claim in both *Dempsey* and *Anniszkiewicz* is the same: an unconstitutional seizure of a pet dog in violation of the Fourth Amendment. As the Second Circuit has held, "the unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment." *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013). The very authority Defendants cite establishes that shooting a dog is in fact a seizure. There is no conceptual distinction between "excessive force" used against a dog and an "unreasonable seizure" of a dog—when an officer shoots and kills a dog, the use of force is the mechanism of the seizure. The *Dempsey* jury instructions, which asked whether the City maintained policies and training regarding officers' use of force against dogs, necessarily encompassed the seizure question because an officer's decision to shoot a dog is both the application of force and the effectuation of the seizure.

Second, Defendants' reliance on the notion that "not all firearm discharges result in a death or seizure of a dog" (Opp. at 4) is irrelevant. In both *Dempsey* and *Anniszkiewicz*, the officers shot and killed the plaintiffs' dogs. The *Dempsey* jury found the City maintained an unconstitutional "policy, custom, or practice regarding dog seizures" (Verdict Sheet Question 7)—the very question at issue here. The jury instructions explained the policies and practices at issue, and the jury answered the seizure question in the affirmative—which is why the Court in *Preston* estopped Defendants from relitigating this same claim in that case.

2

Third, Defendants cite no authority—in this Circuit or elsewhere—holding that jury instructions addressing use of force against animals are insufficient to establish an issue regarding seizure of those animals under the Fourth Amendment. Their argument conflates a stylistic critique of the instructions with a substantive legal deficiency, and the law does not support the distinction they attempt to draw.

**B.  Defendants Misapprehend the *Monell* Theories Decided in Dempsey.**

Defendants' argument that the policy theory of municipal liability was not "actually decided" because Verdict Sheet Question 7 was phrased in the disjunctive—"policy, custom, *or* practice"—fails for the same reasons explained in Plaintiff's opening brief.

First, "practice" is not a distinct legal category under *Monell*. It is a descriptive term courts use to refer to the same concept as a custom. *Shot v. Town of Irondequoit*, No. 25-CV-06333-FPG, 2026 WL 395113, at *3 (W.D.N.Y. Feb. 12, 2026) ("practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers"); *McGaffigan v. City of Rochester*, 342 F.R.D. 41, 46 (W.D.N.Y. 2022) (same).

Second, the *Dempsey* Plaintiffs presented evidence on both policy and custom theories and addressed each basis for liability in closing argument. Lieutenant Cuilla explained that the RPD's written policy permits officers to shoot a dog if they believe the dog poses a threat of any injury, however minor. Shields Reply Decl. ¶ 17; Ex. 4 to the Shields Reply Decl., Cuilla Dep Tr. at 183–185; Ex. 5 to the Shields Reply Decl., GO 340. However, the City's trainer, Reno DiDomenico, testified that the New York Agriculture & Markets Law only permits deadly force against a dog when the dog poses a threat of "serious physical injury." Shields Reply Decl. ¶ 18; Ex. 6 to the Shields Reply Decl., DiDomenico PowerPoint at pg. 8; Ex. 7 to the Shields Reply Decl., DiDomenico Dep. Tr. at 97–98.

On the custom theory, Plaintiffs' counsel argued both a widespread pattern of dog shootings and the single incident with Defendant Officer Algarin. DiDomenico testified that once the dog charges, it is a shoot situation. Shields Reply Decl. ¶ 16; Ex. 7 to the Shields Reply Decl., DiDomenico Dep. Tr. at 126, 129–131. Plaintiffs' expert, James Crosby, testified that a baton or pepper spray are almost 100% effective against a charging dog, that RPD officers shot 46 dogs in five years before the *Dempsey* incident, that zero officers were disciplined or retrained for any dog shooting, and that every shooting was approved as consistent with RPD policy and training. Shields Reply Decl. ¶ 15. The jury heard argument on all theories, deliberated, and returned a unanimous verdict in Plaintiff's favor on all *Monell* claims. This is the same evidence in this case.

The *Cousik* court confronted the identical problem. There, the verdict form "did not ask the jury to make specific findings about any particular failure-to-train theory." *Cousik v. City & County of Denver*, No. 22-cv-01213-NYW-KAS, 2024 WL 4929272, at *4–5 (D. Colo. Dec. 2, 2024). The court nonetheless applied collateral estoppel. Here, the case for preclusion is even stronger: the *Dempsey* verdict form posed a discrete question covering the precise issue in *Anniszkiewicz*.

Defendants' footnote 2 assertion that Ms. Anniszkiewicz "did not allege all of these three theories" of municipal liability is contradicted by Defendants' own description of the Complaint. On the very same page, Defendants acknowledge that the Complaint alleges "an unlawful policy, a custom, and the City's purported deliberate indifference." (Opp. at 3, citing *Anniszkiewicz* Complaint ¶¶ 76–78, 86, 126, 94, 114.) The Complaint plainly alleges all three theories.

In any event, collateral estoppel precludes the relitigating of "issues"—"not with claims or ... causes of action as a whole." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 80–81 (2d Cir. 2019). The identical question is presented in *Anniszkiewicz*. Further, Defendants' own cited

authority, *Bifolck*, establishes that "the identicality standard does not require either that the two cases have the same scope or that they involve the same causes of action." *Bifolck* at 82, quoting *Proctor v. LeClaire*, 715 F.3d 402. The jury necessarily found that the City's conduct with respect to dog encounters was constitutionally deficient—the operative issue for collateral estoppel.

C. <u>**The Deliberate Indifference Issues Are Identical.**</u>

Defendants argue that the failure-to-train theories are not identical because in *Anniszkiewicz*, officers responded to a 911 call about a stray dog, whereas in *Dempsey*, officers did not know a dog was present. (Opp. at 7–8.) This argument confuses the individual officers' circumstances with the City's systemic training failures.

The identity-of-issues requirement does not demand that every background fact be identical—it requires that the legal issue be the same. *See Kluppelberg v. Burge*, 276 F. Supp. 3d 773, 777 (N.D. Ill. 2017) (applying collateral estoppel across different detective areas and partially different time frames, finding the issues "sufficient for purposes of collateral estoppel when applying a general verdict"). The legal issue here—whether the City's training on dog encounters was constitutionally deficient and whether the City was deliberately indifferent—is identical in both cases. The question is not what the officers knew about the dog before arriving at the scene; it is whether the City's training program equipped officers to handle dog encounters lawfully, regardless of the circumstances under which they encountered the dog.

Indeed, Defendants' factual distinction undercuts their own argument. If, as Defendants contend, the City's Training Bulletin on responding to calls where animals are known to be present actually applies to the *Anniszkiewicz* situation, that only reinforces the City's failure-to-train liability: Officer Cala responded to a call where he knew a stray dog was present, and yet he still shot Sampson without planning for or attempting any non-lethal alternative. The training was inadequate regardless of whether the officer expected to encounter a dog.

As demonstrated *supra* in Section I, the *Anniszkiewicz* and *Dempsey* incidents both predated the December 2019 roll call training—the basis for Judge Holland's denial of training estoppel in *Preston*. The same training regime, policies, and expert evidence apply to both *Dempsey* and *Anniszkiewicz*, and the legal issue of deliberate indifference is identical.

Defendants' reliance on Judge Pedersen's exclusion of post-December 2018 dog-shooting incidents from the *Dempsey* trial (Opp. at 8) is irrelevant. As detailed in Section II.B *supra*, the *Dempsey* jury heard the identical training and policy evidence that will be presented here. (ECF 80-1 at 6–7, 18–19.) The post-incident FDRs are irrelevant to the training.

## D. <u>Application of Collateral Estoppel Is Not Unfair.</u>

### 1. <u>The *Cox* Summary Judgment Ruling Is Not an Inconsistent Prior Judgment.</u>

Defendants argue that the summary judgment ruling in *Cox v. City of Rochester*, No. 22-cv-6207-FPG, 2025 WL 50340 (W.D.N.Y. Jan. 8, 2025), constitutes an "inconsistent prior judgment" under *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979). (Opp. at 9–10.) Chief Judge Elizabeth Wolford has already rejected this argument twice.

After the *Cox* ruling was issued, Defendants moved for reconsideration in both *Dempsey* and *Gursslin*, arguing that Judge Wolford should alter her summary judgment decisions to "align" with *Cox*. Judge Wolford denied both motions. *Dempsey v. City of Rochester*, No. 19-cv-6780, 2025 WL 1132847, at *4 (W.D.N.Y. Apr. 16, 2025); *Gursslin v. City of Rochester*, No. 20-cv-6508, 2025 WL 1132854, at *2–3 (W.D.N.Y. Apr. 16, 2025). Judge Wolford held that the *Cox* decision reaching a different result on "ostensibly the same evidence" was "not enough to justify reconsideration," because "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a

different case." *Dempsey*, 2025 WL 1132847, at *4 (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)).

A summary judgment ruling on the sufficiency of one plaintiff's evidentiary showing is not an inconsistent "judgment" compared to a full jury trial verdict. The *Cousik* court squarely rejected the identical argument: Denver argued that the court's own prior summary judgment ruling against the plaintiffs on the same failure-to-train issue constituted an inconsistent judgment, and the court disagreed, explaining that its earlier ruling "was largely based on the plaintiffs' presentation of their case at summary judgment, not necessarily a lack of supportive evidence." *Cousik*, 2024 WL 4929272, at *6.

The overlapping evidence that Defendants identify in their opposition—the Crosby report, Cuilla deposition, DiDomenico deposition, and other materials (Opp. at 10–11)—supports Plaintiff's motion, not Defendants'. The fact that the same evidence was before both the *Cox* summary judgment court and the *Dempsey* trial jury demonstrates the identity of the issues. But a summary judgment ruling—which evaluates whether a reasonable jury could find for the non-movant—is a fundamentally different proceeding from a trial, where the jury actually weighs the evidence. The *Dempsey* jury weighed this evidence and found for the plaintiff. That verdict, not the *Cox* summary judgment ruling, is the proper basis for collateral estoppel.

### 2. Judge Holland Has Already Rejected Defendants' Argument That Collateral Estoppel Cannot Apply to Municipalities.

Defendants argue that it is "not clear" whether offensive collateral estoppel can be applied against municipalities, citing *United States v. Mendoza*, 464 U.S. 154 (1984), and *Domeneck v. City of New York*, 2019 WL 5727409 (S.D.N.Y. 2019). (Opp. at 11–12.) The City made this identical argument in *Preston*. (*See* Ex. 3 to the Shields Reply Decl., City Mem. of Law in Opp. to Collateral Estoppel, *Preston v. City of Rochester*, No. 6:22-CV-06525-CDH (ECF No. 82), at

8–10.) Judge Holland rejected it, granting collateral estoppel on the policy, custom, and practice claim notwithstanding the City's *Mendoza* objection. (*See* Ex. 2 to the Shields Reply Decl.)

This Court should do the same. *Mendoza* involved the *federal government* and rested on concerns unique to that defendant—intercircuit percolation and the Solicitor General's discretion in selecting appeals. 464 U.S. at 159–63. Those concerns have no application to a municipal defendant litigating § 1983 cases in a single district. District courts in this Circuit have applied offensive collateral estoppel against municipalities. *See DeCastro v. City of New York*, 278 F. Supp. 3d 753, 764–67 (S.D.N.Y. 2017). *Domeneck* merely noted a circuit split in a footnote without holding that *Mendoza* bars the doctrine's use against a municipality. And this Court itself recognized in its November 26, 2025 Decision and Order that "the findings of the jury in the *Dempsey* matter could potentially have preclusive effect as to the City," citing *Green v. Kadilac Mortgage Bankers, Ltd.*, 936 F. Supp. 108, 114 (S.D.N.Y. 1996), and *Allen v. McCurry*, 449 U.S. 90, 104–05 (1980). (Shields Reply Decl. Ex. 1 at 20–21.) Judge Holland's ruling in *Preston* now provides additional, directly on-point authority confirming what this Court and others have recognized: collateral estoppel applies in § 1983 cases against municipalities.

### 3. Judge Holland Rejected Defendants' Argument That The *Dempsey* Jury Instructions Create Unfairness And Undermine Judicial Economy.

Defendants argue that the *Dempsey* jury instructions were "erroneous" and that granting collateral estoppel based on those instructions would not serve judicial economy. (Opp. at 8–13.) The City raised the same arguments in *Preston*—and Judge Holland granted collateral estoppel on the policy, custom, and practice claim notwithstanding these objections. (*See* Ex. 2 to the Shields Reply Decl.; Ex. 3 to the Shields Reply Decl. at 8–13.) As to the failure-to-train claim, Judge Holland denied collateral estoppel on different grounds (the 2019 roll call training), not because of the jury instructions. The jury instruction arguments fail here on the merits as well.

The *Dempsey* jury charge faithfully tracked the controlling standard for failure-to-train municipal liability under *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989), and every required element was submitted to and decided by the jury. The elements Defendants now complain were absent—policymaker identification and the specific notice formulation—were litigated in *Dempsey* and rejected three times: at summary judgment, *Dempsey v. City of Rochester*, 761 F. Supp. 3d 607 (W.D.N.Y. 2025); on reconsideration, *Dempsey*, 2025 WL 1132847, at *3; and at the charge conferences on January 26 and 28, 2026, where the Court considered and rejected Defendants' proposed instructions incorporating the very elements they now claim were missing. Shields Reply Decl. ¶ 20.

Defendants' remaining authorities are unavailing. *Ellis v. Washington*, 409 F. Supp. 3d 148, 154 (W.D.N.Y. 2019), is a non-binding district court decision. *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992), does not mandate the specific formulation Defendants urge. And their invocation of the "totality of the circumstances" (Opp. at 9, citing *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013)) conflates the standard for the individual officer's seizure with the standard for municipal liability—*Carroll* addresses the former, not the *Monell* questions at issue here. Collateral estoppel requires that the issue be "actually litigated and decided," not that jury instructions be phrased identically across proceedings. *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005).

### E. <u>Plaintiff Seeks to Preclude Discrete Issues, Not an Entire Cause of Action.</u>

Defendants argue that Plaintiff "improperly evokes collateral estoppel for an entire theory of municipal liability." (Opp. at 12–14.) This mischaracterizes the relief sought. As Plaintiff's opening brief made clear (Pl. MOL at 20–23), the City would be precluded from relitigating (a) whether it maintained an unconstitutional policy, custom, or practice regarding dog seizures, and (b) whether it failed to adequately train its officers. Plaintiff would still be required to prove (c)

that Officer Cala's shooting of Sampson violated the Fourth Amendment, and (d) that the City's unconstitutional policy and/or failure to train was the moving force behind Officer Cala's conduct.

This is exactly the framework applied in *Kluppelberg* and *Cousik*. In *Kluppelberg*, the court precluded the City of Chicago from contesting that it had a policy of withholding exculpatory evidence—but permitted the City to contest causation and individual liability. 276 F. Supp. 3d at 778–79. In *Cousik*, the court precluded Denver from relitigating its failure to train and its deliberate indifference—but required the plaintiffs to prove individual causation. 2024 WL 4929272, at *7. Plaintiff here seeks the same precise, delineated relief. Indeed, Defendants themselves concede the propriety of this approach, acknowledging that the Court could "limit any estoppel to specific issues or elements within municipal liability." (Opp. at 14.) That is what Plaintiff asks.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion and preclude Defendant City of Rochester from relitigating the *Monell* issues decided by the *Dempsey* jury.

Respectfully Submitted,

Dated: March 30, 2026        Roth & Roth, LLP
       New York, New York

*Elliot Shields*
_____
Elliot Dolby Shields
Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020
eshields@rothandrothlaw.com

*Counsel for Plaintiff*