# Rochester Police Department
# General Order


| EFFECTIVE DATE: | SUBJECT: | | ORDER# |
|---|---|---|---|
| **August 29, 2017** | **USE OF DEADLY PHYSICAL FORCE** | | **340** |
| **RESCINDS:** G.O. 340 (04/20/15) | **REFERENCE STANDARD(S):** **NYS:** 14.1,.4;20.1,.4-.7;21.1,.2;32.4;40.2 | | **PAGE** 1 of 15 |
| **ATTACHMENT(S):** Firearms Discharge Reporting Guidelines | | | |
| **Chief's Signature:** | *Michael L. Ciminelli* | | |

## I.      DEFINITIONS

No definitions listed.


## II.      POLICY

A.      Members of the Rochester Police Department (RPD) may use deadly physical force, as defined by Article 10 of the New York State Penal Law, <u>only</u> when the use of deadly physical force is necessary to defend the member or another person from what the member reasonably believes to be the use or imminent use of deadly physical force.

Reasonable belief exists when both of the following subjective and objective conditions are met:

1.      The member reasonably believes another person is using or is about to use deadly physical force, and that it is necessary for the member to use deadly physical force to defend himself or another person, <u>and</u>

2.      Evidence or information which appears reliable discloses facts circumstance which are collectively of such weight and persuasiveness as to convince a member of ordinary intelligence, training, judgment, and experience that another person is using or is about to use deadly physical force, and that it is necessary for the member to use deadly physical force to defend himself or another person.

B.      Members of the RPD may use Kinetic Energy Impact Projectiles (KEIP), commonly known as "Bean Bag Rounds", as a means of less lethal force in <u>non-deadly use of force situations.</u> KEIP are intended to

COR 000107

provide a member with a less lethal alternative to safely take into custody violent or dangerous persons by allowing members to deliver impact projectiles from an extended range. Only those members that have successfully completed an annual training course and have demonstrated proficiency in the use of KEIP will be authorized to deploy same. The impact projectiles are designed to incapacitate a subject with a minimal potential for causing death or serious physical injury compared to standard projectiles when used consistent with training. However, members must recognize that a potential for death or serious physical injury from these impact projectiles does exist, and that care must be exercised in their use.

C.   The Pepperball Launching System (PLS) may be used as a means of less lethal force. The PLS delivers an irritant, Capsaicin II, by means of a compressed gas propellant. Only those members that have successfully completed an annual PLS training course and have demonstrated proficiency in the use of PLS will be authorized to deploy same. Its primary use is to disperse groups engaged in civil disorder from a safe distance, but also allows members to take violent or dangerous individuals into custody. Nothing shall preclude it from being used in other situations in accordance with current directives and training.

D.   Conducted Electrical Weapons (CEW) may be used as a means of less lethal force in accordance with current directives and training. Only those members that have successfully completed the specific Department approved training and have demonstrated proficiency in the use of CEW's will be authorized to deploy same. *See* Taser Conducted Electrical Weapon Standard Operating Procedure.

E.   Less lethal force will be consistent with Departmental training and use of force continuum.

F.   The fact that a member is justified in using deadly physical force or less lethal force does not relieve the member from the duty to act with due regard for the safety of all persons, nor will such provisions protect members from the consequences of their reckless disregard for the safety of other.

## III.   FIREARM GUIDELINES

A.   Members are justified in removing firearms from holsters and/or gun mounts and pointing the firearm if the member reasonably believes:

COR 000108

1. That a person or a situation poses or may pose an immediate threat of death or serious physical injury either to themselves or another person.

2. There is justification to use a firearm against an animal pursuant to Section III.B below.

B. Members may use firearms against animals when they are:

1. Attacking or presenting an imminent danger to any person.

2. Destructive, injured, or threatening, with supervisory approval when there is time to obtain it.

C. Warning shots are prohibited.

D. Discharge of a firearm from or at a moving vehicle is prohibited unless the member reasonably believes that the occupant(s) of the vehicle are using or are about to use deadly physical force against the member or another person. Therefore, shooting at a fleeing vehicle that is <u>traveling away</u> from the member and is no longer a threat to the member or a third person is prohibited.

## IV. GUIDELINES – PATROL RIFLE

A. Only those members who have successfully completed the specific Department-approved Designated Rifleman training and have demonstrated weapon proficiency will be authorized to carry a patrol rifle on duty.

B. Patrol Rifles will be signed out <u>only</u> by Designated Riflemen and will be physically and visually inspected at the beginning and the end of each tour of duty.

C. During the tour of duty, the patrol rifle will be secured in a vehicle mount with the safety "on", bolt forward on an empty chamber and a loaded magazine in the magazine well.

D. Upon completion of each tour, every patrol rifle will be stored in locked safes located at each Section/Unit, unloaded with the magazine removed and bolt locked open.

E. The decision to deploy the rifle will be made by the Designated Rifleman and/or the supervisor on scene. Typical deployments would

COR 000109

include, but not limited to: hostage situations, barricaded subjects, sniper situations, active shooters, or any other incidents where deployment of the rifle would be appropriate.

1. The patrol rifle will not be deployed or used in situations involving a civil demonstration, protest, or crowd control unless exigent circumstances exist involving a threat from firearms, explosives, or other dangerous weapons.

F. Deployment of a patrol rifle is <u>not</u> to be used as a substitute for a SWAT response. If the situation merits a SWAT response, the on-scene supervisor should request SWAT through the prescribed chain of command.

G. Nothing above shall preclude an officer, in emergency or exigent circumstances, from deploying the rifle in any fashion to protect himself or another person, provided said actions are consistent with law and departmental policy and training relative to the use of the patrol rifle, the use of force, and/or the use of deadly physical force.

## V. GUIDELINES – LESS LETHAL SHOTGUN AND KINETIC ENERGY IMPACT PROJECTILES

A. Only those members who have successfully completed the specific Department approved training and have demonstrated proficiency in the use of less lethal force shotguns will be authorized to deploy KEIP.

B. Only Department approved KEIP and shotguns assigned for their exclusive use will be authorized for use by trained members. The only weapon designated for use with less lethal ammunition is the RPD's Remington 870 shotgun, 12 gauge, pump action, with orange colored stocks to differentiate them from the standard RPD issued shotgun.

C. Less lethal shotguns will be stored unloaded in a rifle case in the trunk of marked patrol vehicles. The weapon is to remain in its case in the trunk until needed for field use situations or routine maintenance. <u>It is not to be placed in the shotgun rack in the interior of the patrol vehicle</u>. Only KEIP will be stored in the rifle case and used with less lethal shotguns.

COR 000110

D.      KEIP should only be used when lesser levels of force have been unsuccessful or their use is inappropriate, as defined by the use of force continuum.

E.      Use of KEIP will be at the discretion of the authorized member once on scene, and with supervisory approval when there is time to obtain approval.

F.      The member with the less lethal shotgun should formulate a plan and be prepared to implement it.  The plan should include, at a minimum:

   1.      Deadly physical force coverage by another member;

   2.      A takedown team of a least two (2) members;

   3.      Notification to all members on scene that impact projectiles are going to be deployed to prevent the firing of unintentional deadly physical force rounds, unless done so with cause.

   4.      Providing the subject with an opportunity to comply.  The subject should not be forewarned of being struck with impact projectiles, as this will only diminish any desired effect.

G.      All impact projectiles that are fired at and strike any person in a field use situation will be processed and preserved as evidence by an Evidence Technician.


## VI.      GUIDELINES – LESS LETHAL PEPPERBALL LAUNCHING SYSTEM

A.      Only those members who have successfully completed the specific Department approved training and have demonstrated proficiency in the use of PLS will be authorized to deploy same.

B.      Only Department approved PLS will be authorized for use by trained members.

C.      When not in use, the PLS will be stored in a designated, secure location that is only accessible by certified users.

D.      When deploying the PLS a member will make a notification over the police radio that they are on scene.

COR 000111

E. The PLS should only be used when lesser levels of force have been unsuccessful or their use is inappropriate, as defined by the use of force continuum.

F. Use of PLS will be at the discretion of the authorized member once on scene, in accordance with current training and standard operating procedure guidelines and with supervisory approval when there is time to obtain approval. For situations involving crowd control/Mobile Field Force (MFF) authorization for use and deployment of the PLS will be obtained prior to its use from the Incident Commander or MFF Commander.

G. The member with the PLS should formulate a plan and be prepared to implement it. The plan should include, at a minimum:

1. Deadly physical force coverage by another member;

2. A takedown team of a least two (2) members;

3. Providing the subject with an opportunity to comply without risk to the safety of members or others.

## VII. GUIDELINES-CONUCTED ELECTRICAL WEAPONS (CEW)

A. Only those members who have successfully completed the specific Department approved training and have demonstrated proficiency in the use of CEW's will be authorized to deploy same.

B. Only currently approved Department CEW's will be authorized for use by trained members.

C. The CEW should only be used when lesser levels of force have been unsuccessful or their use is inappropriate, as defined by the use of force continuum. All applications of the TASER CEW are listed on the force continuum at level 3 on a subject who is demonstrating assaultive behavior.

D. Members are authorized to use CEW's on subjects who demonstrate "Assaultive Behavior" as defined by the use of force continuum. The CEW should only be applied to a handcuffed subject who is demonstrating "Assaultive Behavior" and there are one or more "Special Circumstance" present and other techniques/tactics were

COR 000112

used and not effective and/or other techniques/tactics could not be reasonably attempted under the circumstances.

E.     All persons subjected to a CEW shall be examined by ambulance personnel. If a real or potential medical emergency is identified by EMS personnel, the subject will be transported to a hospital by ambulance.. The subject must be transported to a hospital for treatment for the removal of probes, if utilized.  The subject will remain in custody while that occurs.

F.     Members will adhere to the procedures in the Taser Conducted Electrical Weapons (CEW) Standard Operating Procedure.

COR 000113

## VIII.  PROCEDURES

When a member <u>discharges</u> a firearm, whether on or off duty, other than for training, legal hunting, or target practice, or uses deadly physical force with any instrument, he will immediately notify the on-duty supervisor of his Division, Section or Unit and submit the required reports following guidelines listed in Attachment A.

A.  If a firearm discharge is accidental or unintentional and did not injure anyone:

   1.  The member's supervisor will respond to the scene and ensure that an Incident Report documenting the particulars is completed.

   2.  The member's Section Platoon Commanding Officer will:

      a)  Respond to the scene.

      b)  Notify an on-duty supervisor within the area of occurrence if outside the jurisdiction of the City of Rochester.

      c)  Conduct a preliminary investigation into the incident.

         NOTE:  If response to the scene is inappropriate due to the distance from the City of Rochester, the member's Section Platoon Commanding Officer will obtain preliminary information from the case coordinator of the investigating agency.

      d)  Notify the Staff Duty Officer, if on duty, the Patrol Division Commander, if the incident occurred within his Patrol Division Command, and the member's Bureau/Section/Division Commanding Officer.

   3.  The Staff Duty Officer, Patrol Division Commander or member's Bureau/Section/Division Commanding Officer, will notify the Deputy Chief of Operations, and the Commanding Officer of the Professional Standards Section (PSS).

   4.  The Deputy Chief of Operations and Commanding Officer of PSS will:

COR 000114

        a)      Make a determination based on the circumstances of the situation as to whether to respond to the scene.

        b)      The Commanding Officer of PSS will document any non-response to the scene by the Deputy Chief of Operations or PSS personnel and make it a part of the PSS incident file.

5. All reports will be immediately forwarded through the chain of command, a copy of which will be forwarded to PSS.

B. If the discharge of a firearm, which includes the less lethal shotgun, is directed at a person (whether or not that person is struck), or if as a result of any discharge, a person is injured or a death occurs:

1. The member's supervisor will:

        a)      Respond to the scene.

        b)      Call for medical assistance, if needed.

        c)      Secure the scene and any evidence.

        d)      Manage the scene by controlling access to it. Access is limited to:

            (1)    Evidence Technicians

            (2)    Major Crimes Investigations

            (3)    PSS personnel

            (4)    District Attorney's Office personnel

            NOTE: All others will be restricted and only allowed entry with the permission of the ranking officer at the scene or the assigned member of the Technician's Unit on-scene.

        e)      Notwithstanding the need for medical attention, isolate and secure the involved member(s). Until directed to another location by a supervisor of the rank of Captain or higher, keep the involved member(s) at the scene or near the scene, out of view of the public, but accessible to responding Command Officers.

COR 000115

f) Gather preliminary information from the involved member(s) as to circumstances of the incident.

g) Establish a command post and staging area.

h) Advise their on-duty Commanding Officer.

i) Immediately prepare and submit an Incident Report, Subject Resistance Report, RPD 1377, and any other reports so directed by the RPD.

2. The member's supervisor, or Section Platoon Commanding Officer, will notify the Staff Duty Officer if on duty, the Patrol Division Commander, if the incident occurred within his Patrol Division Command, and the member's Bureau/Section Commanding Officer. A response to the scene is required (whether the incident is on or off duty).

If the scene is located outside the City of Rochester, the Patrol Division Commander or the member's Bureau/Section Commanding Officer, will determine whether to respond to the scene after considering:

a) Apparent surrounding circumstances;

b) Injuries to police and/or non-police personnel;

c) Distance from the City of Rochester.

3. The Patrol Commander will:

a) Immediately notify the Deputy Chief of Operations, the Commanding Officer of PSS, and the member's Bureau/Section Commanding Officer.

a) Ensure that the involved member(s):

(1) Receives medical assistance, if needed.

(2) Is afforded privacy from inquiries from the public and all Departmental personnel not involved in the actual investigation of the incident.

(3) Receives trauma crisis counseling as required in Section C below.

b)   Ensure that the involved member's supervisor is relieved from the scene if experiencing psychological trauma.

c)   Initiate and coordinate a preliminary investigation of the circumstances surrounding the incident (unless otherwise directed by established authority) and promptly report the results of the preliminary investigation to the member's Bureau/Division Commanding Officer, Deputy Chief of Operations, or the Chief of Police if applicable, according to the chain of command.

d)   Appoint supervisory personnel to make notify/transport of the involved member's significant others.

e)   Be responsible for ensuring the notify/transport functions, to include periodic MDC updates.

NOTE:  Only the appointed supervisor will conduct the notify/transport and periodic updates.

f)   Except as directed by the Chief of Police, ensure that the firearm used (and any related equipment), other than the less lethal shotgun when used in an incident which there was no serious physical injury or death, is secured by a supervisor or an Evidence Technician and that said firearm is properly rendered safe when secured.

NOTE:  If necessary, firearms will be placed in the Property Clerk's Office until the completion of any internal or legal proceedings; or, in the case of an accidental/unintentional discharge not resulting in damage or injury, until said firearm is examined by a Firearms Training Unit armorer and found to be functioning properly.  The Firearms Training Unit staff will replace the weapon and equipment as directed by the Chief of Police or a Deputy Chief of Police.

4.   The DCO and Commanding Officer of PSS will:

a)   Make a determination based on the circumstances of the situation as to whether to respond to the scene.

COR 000117

      b)     The Commanding Officer of PSS will document any non-response to the scene by the Deputy Chief of Operations or PSS personnel and make it a part of the PSS incident file.

5. The reports will be forwarded through the chain of command to the Chief of Police prior to the conclusion of the tour of duty on which the incident occurred by the member or if the member is incapacitated, by their on-duty supervisor.

6. The Office of the Chief of Police will forward:

    a)     The original case package to PSS.

    b)     Copies to the Professional Development Section and Law Department.

C. Critical Incident Counseling is mandated in all cases of use of deadly physical force:

1. On-scene and/or at any other location as directed by the Chief of Police or his designee.

2. At two week follow-up.

3. At six week follow-up.

4. At one year follow-up.

5. Other counseling as may be requested by the employee or directed by the Chief of Police.

D. If a firearm discharge is directed at an animal:

1. The member's supervisor will submit an Incident Report.

2. The member's Section Platoon Commanding Officer will:

    a)     Respond to the scene of the incident, and direct a thorough investigation.

        NOTE: Attachment A should be used as a guide when investigating the incident.

    b)     Notify the Commanding Officer of PSS.

COR 000118

3.      The Commanding Officer of PSS will:

a)      Make a determination based on the circumstances of the situation as to whether to respond to the scene and/or make further notifications.

b)      Document any non-response to the scene by PSS and make it a part of the incident file.

4.      The supervisor will ensure that:

a)      An Evidence Technician responds to the scene for photos and recovery of any on-scene evidence.

b)      The City of Rochester's Animal Services (RAS) personnel are called to the scene of any animal shot in the City or which appears to be suffering from disease (e.g., rabies).

c)      If the animal has suffered a fatal wound and does not appear to be diseased:

(1)      The animal can be released to the owner for proper disposal; or

(2)      If the owner cannot be located or does not request custody of the animal, the City of Rochester Service Bureau will be notified for immediate pickup. A member should remain at the scene until the Service Bureau arrives, unless directed otherwise by a supervisor.

(3)      RAS will be the only means by which an animal is transferred to a designated animal hospital or veterinarian for euthanasia in incidents where the animal suffers from an untreatable/unsurvivable wound.

NOTE: Owners may be allowed, if requested, to transport the animal. Members will not transport the animal.

d)      If the animal has suffered a non-fatal wound:

COR 000119

(1) Allow the owner to transport the animal to their veterinarian for treatment; or

(2) RAS personnel will transport the animal to:

(a) The owner's veterinarian of choice within Monroe County if the animal has a treatable injury.

(b) An approved emergency veterinarian service if the owner does not have a veterinarian of choice and the animal has a treatable injury.

e) The Incident Report is forward through the normal distribution process, a copy of which will be forwarded to PSS.

E. If the owner inquires about reimbursement for veterinarian fees or compensation for the animal, the supervisor will instruct the owner to contact the City of Rochester's Law Department office on the next business day to receive instructions on how to file a claim against the City.

## IX. ASSIGNMENT TO ADMINISTRATIVE DUTY

A. When a member is involved in a shooting or other use of a countermeasure that results in serious physical injury or death, the Chief of Police or his designee will assign that member to administrative duty. The temporary placement to an administrative assignment does not imply the guilt or innocence of the member involved.

1. The administrative duty will not assign the member to duties that have a high potential for arrest and subject resistance incidents.

2. Administrative duty assignment will be made in the best interest of the Department and the member.

B. When a member is assigned to administrative duty, they will:

COR 000120

1. Refrain from routine exercise of patrol function arrest and intervention powers.

2. Refrain from any public discussion of their administrative assignment or circumstances related to the incident.

3. Retain all rights, privileges and employee benefits.

4. Retain responsibility for compliance with all laws, Departmental Rules and Regulations, General and Administrative Orders, and directives governing Department personnel.

C. A member's return to full-duty status will be based upon the results of relevant investigations and the Chief's decision regarding these matters.

Attachment

COR 000121

## APPENDIX

## FIREARMS DISCHARGE REPORTING GUIDLINES

Any Crime, Incident, or subject Resistance Report relating to the discharge of a firearm or the use of deadly physical force by a member should include, but not be limited to, the following:

1. Nature of the incident; how dispatched and/or initial perception

2. Lighting and weather conditions

3. Whether the member was on or off duty / uniform or plainclothes

4. Circumstances leading to the discharge of the firearm (reason for use of deadly physical force) include any escalation of force, if applicable

5. Number of rounds fired by the member and adversary. If applicable, include succession of rounds fired

6. Description of firearm(s) used, if applicable, including:

   a) whether or not authorized service weapon

   b) type (e.g., revolver, semi-automatic, shotgun, rifle, etc)

   c) make, caliber and serial number

   d) number of rounds (capacity and actual)

   e) type of ammunition used

   f) type of holster and whether Department issued

   g) pistol permit number, if applicable

7. A complete description of any instrument/weapon used by the officer other than Department issued firearms

8. Witness(es) contact data, including daytime and evening contact information, and witness(es) who may have seen only part or the entire incident

9. Name(s) and assignment(s) of members present at the scene with statements as to their involvement

10. Complete description of weapon(s) used by adversary and the weapons complete description

11. Suspect information in narrative should indicate any previous knowledge of suspect and any known tendencies towards violence

COR 000122