UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICTORIA PRESTON,

                    Plaintiff,

        v.

THE CITY OF ROCHESTER and
MITCHELL LEACH,

                  Defendants

**DECISION AND ORDER**

6:22-CV-06525 CDH

---

## BACKGROUND

On February 14, 2020, defendant Mitchell Leach, an officer of the Rochester Police Department ("RPD"), shot and killed a dog, Zyria, in whom plaintiff Victoria Preston ("Preston") claims to have had an ownership interest. (*See* Dkt. 46 at 1).[1] Preston "contends that Zyria's death was part of 'an epidemic of police killing pet dogs' in the City of Rochester ('City') and has sued Leach and the City (collectively 'Defendants') for unlawful seizure in violation of the Fourth Amendment" pursuant to 42 U.S.C. § 1983. (*Id.*).

A trial in this matter is scheduled to commence on April 13, 2026. (Dkt. 62). On January 30, 2026, a jury in the related matter of *Dempsey, et ano. v. City of Rochester, et al.*, No. 6:19-cv-06780-MJP ("*Dempsey*"), returned a verdict in favor of

---

[1]    Defendants have challenged Preston's ownership interest in Zyria. (*See* Dkt. 66). The Court anticipates that this issue will be resolved at the time of trial.

the plaintiffs therein.[2] The *Dempsey* plaintiffs, like Preston, alleged an unlawful seizure in violation of the Fourth Amendment based on an RPD officer having shot and killed their pet dog. The *Dempsey* plaintiffs prevailed on their claims against both the individual officer who fired the weapon and on their claims against the City, the latter of which were based on a theory of municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). (*See Dempsey*, Dkt. 229).

Preston has now moved to preclude the City "from relitigating its *Monell* liability on Plaintiff's . . . Fourth Amendment . . . claims regarding the unconstitutional seizure of her dog," pursuant to the doctrine of offensive collateral estoppel. (Dkt. 65 at 1). Defendants oppose this motion. (Dkt. 82). For the reasons that follow, the Court grants in part and denies in part Preston's motion.

## DISCUSSION

### I.    Legal Standard for Offensive Collateral Estoppel[3]

"Under the doctrine of offensive collateral estoppel, a plaintiff may preclude a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005). "To invoke this doctrine, a plaintiff must satisfy four conditions: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding

---

[2]    The *Dempsey* plaintiffs are represented by the same counsel as Preston.

[3]    Offensive collateral estoppel is also sometimes referred to as "nonmutual offensive collateral estoppel."

must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79 (2d Cir. 2019).

Further, "in order to blunt the fear that nonmutual offensive collateral estoppel may be unfair to a defendant or fail to promote judicial economy, district courts must ensure that application of the doctrine is not unfair." *Id.* In determining fairness, the Court may consider several factors, including: (1) "whether the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant"; (2) whether there are different procedural opportunities available in the second action; (3) whether the defendant had a reduced incentive to raise the issue in the earlier action; (4) whether the earlier action was tried before a jury or a judge; (5) "the relative scope or complexity of the two actions and whether they involve different causes of action"; and (6) whether applying collateral estoppel will increase the efficiency of the proceedings. *Id.* at 84 (quotation omitted).

## II.     Identity of Issues

The first condition required for application of offensive collateral estoppel is that the issues in both proceedings must be identical. *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013). This condition "is concerned not with claims or causes of action as a whole but with issues—single, certain and material points arising out of the allegations and contentions of the parties." *Bifolck*, 936 F.3d at 81 (quotation, alterations, and internal citation omitted). "To meet the identity-of-issues prong of

collateral estoppel, it is not necessary that the issues be exactly identical; it is sufficient that 'the issues presented in the earlier litigation are substantially the same as those presented by the later action.'" *Zherka v. City of New York*, 459 F. App'x 10, 13 (2d Cir. 2012) (alterations omitted and quoting *ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir. 1992)).

Preston has identified two issues that she contends are identical between this action and *Dempsey*: (1) whether the City "maintained an unconstitutional policy, custom, or practice regarding dog seizures" (the "custom, policy, or practice issue"); and (2) whether the City "failed to properly train its officers regarding dog encounters" (the "deliberate indifference/failure to train issue"). (Dkt. 65-1 at 18). Defendants have argued that the latter of these issues fails on the first condition, contending that "[t]he Court should . . . deny the collateral estoppel motion with respect to Ms. Preston's deliberate indifference/failure-to-train theory of municipal liability, because the relevant facts and evidence are not identical in *Dempsey* and *Preston*." (Dkt. 82 at 7).

Defendants' argument rests on the fact that the dog shooting in *Dempsey* occurred on October 19, 2018, and the dog shooting in this matter occurred on February 14, 2020, a gap of approximately 16 months. (*Id.* at 7). Defendants point out that "the extent of the City's training changed in the time period between the *Dempsey* and *Preston* incidents," because "[i]n December 2019, the City retrained its officers on dog encounters." (*Id.* at 8). The Court agrees with Defendants that the existence of an additional training in December 2019—which the *Dempsey* jury

necessarily heard no evidence regarding—renders the deliberate indifference/failure to train issues not identical. *See Tolley v. Am. Transit Ins. Co.*, 638 F. Supp. 1191, 1198 (S.D.N.Y. 1986) (noting that a "difference in proof would raise a substantial question as to the identicality of issues raised in the two proceedings").[4]

Preston's arguments to the contrary are not persuasive. She contends that the December 2019 training was a mere "refresher" that "does not transform the City's training infrastructure." (Dkt. 85 at 6). But the evidence she cites for that proposition contains little information regarding the content of the December 2019 training. She has provided a copy of the PowerPoint presentation that apparently accompanied the December 2019 training (Dkt. 85-4) but has cited no testimony on what was actually said to the officers at that time. Further, while Preston argues that her expert, Dr. James Crosby, "was aware of this refresher and still opined that the RPD's training was deficient and set officers up for failure" (Dkt. 85 at 6), the *Dempsey* jury did not have the opportunity to hear and weigh Dr. Crosby's opinions on this particular issue.

"The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues[.]" *White v. Pro. Claims Bureau, Inc.*, 284 F. Supp. 3d 351, 358 (E.D.N.Y. 2018) (quotation omitted). Here, because the *Dempsey* jury heard no evidence regarding the December 2019 training, and because Preston has not presented evidence showing that the December 2019 was substantively

---

[4]    The *Tolley* court was applying New York law on collateral estoppel. *See Tolley*, 638 F. Supp. at 1193-94. However, "[t]he principles of collateral estoppel are generally the same under New York and federal law." *Belsito v. Cnty. of Erie*, No. 19-CV-215-MJR, 2021 WL 3053386, at *4 (W.D.N.Y. July 20, 2021).

indistinguishable from the training of which the *Dempsey* jury was aware, she has failed to meet that burden on the deliberate indifference/failure to train issue.

The Court reaches a different conclusion, however, as to the custom, policy, or practice issue. Defendants have failed to make any specific identity-of-issue argument as to the custom, policy, or practice issue, but have asserted generally that "[i]t would be unfair to presume—without evidence—that the circumstances in the City of Rochester remained the same over [the] time period" between the shooting in *Dempsey* and the shooting in this matter. (Dkt. 82 at 7). To the extent this argument is meant to apply to the custom, policy, or practice issue, it fails. The relevant issue in *Dempsey* was whether the City maintained "a policy, custom, or practice of permitting officers to use lethal force against household dogs during police encounters, without first attempting non-lethal alternatives, and without any objectively reasonable basis for concluding that the dog posed an imminent threat of serious bodily harm." (Dkt. 65-1 at 19-20 (internal quotation marks omitted)). The identical issue is present in this matter.

Further, and as Preston has correctly pointed out, there was "a unified evidentiary record" in this case and *Dempsey* regarding this issue (Dkt. 65-1 at 20), and—unlike with the deliberate indifference/failure to train issue—there is no evidence in the record before the Court from which a jury could conclude that the City's custom, policy, or practice regarding dog seizures had changed in the months between the *Dempsey* shooting and the shooting of Zyria. *See Kluppelberg v. Burge*, 276 F. Supp. 3d 773, 778 n.6 (N.D. Ill. 2017) (in assessing whether collateral estoppel

should be applied against the City of Chicago, rejecting argument that "the issues are not necessarily the same because there are differences in the detective areas and the time frames referred to in the street files in each case," and explaining that "[t]he difference in the overlapping time frame is . . . not a material difference. There has been no suggestion in this case or in [the earlier action] that the City's policies or practices were different from 1999 to 2006 than they were from 1983 to 1989. . . . Nor has the City argued that the policy or practice changed between when [the plaintiff in the earlier action] was convicted and when [the plaintiff in the second action] went to trial."). The Court finds that Preston has adequately satisfied the identity-of-issues condition with respect to the custom, policy, or practice issue. The Court accordingly continues its analysis with respect to this issue only.

### III.    Litigation and Decision of the Issue

The second condition for application of offensive collateral estoppel is that the issue must have been actually litigated and actually decided in the prior proceeding. *Bifolck*, 936 F.3d at 79. In determining whether this condition has been satisfied, a court conducts "a detailed examination of the record in the prior . . . case, including the pleadings, the evidence submitted and the jury instructions[.]" *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Defendants argue that Preston cannot demonstrate that the custom, policy, or practice issue was "actually decided" in *Dempsey*, because "[t]he relevant municipal liability question was presented to the jury in disjunctive form: 'a policy, custom, or practice.'" (Dkt. 82 at 5). Thus, Defendants contend, the jury was permitted to find in

- 7 -

the *Dempsey* plaintiffs' favor if they found a custom, or a policy, or a practice. (*Id*. at 5-6). And "[b]ecause the jury may have found municipal liability on the basis of a single incident or custom—which Ms. Preston did not allege—she may not rely on the *Dempsey* jury verdict to establish her policy theory of municipal liability." (*Id*. at 6).

To address Defendants' arguments, it is necessary to briefly discuss municipal liability under *Monell*. "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). With respect to the first of these elements, "[a] plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates." *McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016). A plaintiff can "demonstrate a *de facto* policy or custom through a widespread practice," if she can "show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (quotation omitted).

Consistent with this law, the jury in *Dempsey* was instructed that it could find that the City had "a policy, custom, or practice for purposes of § 1983" if it found that "the City maintained an unlawful unwritten policy of . . . requiring or permitting its officers to use lethal force against dogs encountered during police operations without first assessing the actual threat posed by the dog," or if it found that "the City maintained a persistent and widespread practice of authorizing or tolerating the seizing of dogs during police encounters—without requiring officers to assess the actual threat level," or if it found that "the single incident of [the RPD officer] seizing [the *Dempsey* plaintiffs' pet dog] occurred because of a City policy or a widespread City practice of authorizing or tolerating the use of lethal force against dogs without requiring an objective assessment of threat[5]." (Dkt. 65-7 at 49-50). Contrary to Defendants' arguments, these were not three distinct theories of liability—the operative question was always whether the City had "a policy, custom, or practice for purposes of § 1983," and that is the question the *Dempsey* jury actually and necessarily decided. And it answered that question in the affirmative, determining that the City had a policy, custom, or practice of authorizing or tolerating the use of lethal force against dogs during police encounters without requiring officers to objectively assess the actual threat level. "[T]here is no other policy or practice that would have supported the verdict[.]" *Kluppelberg*, 276 F. Supp. 3d at 777.

Defendants' argument that Preston did not allege municipal liability on the

---

[5]     The Court understands Defendants' argument that the *Dempsey* jury may have found municipal liability on the basis of a "single incident" (Dkt. 82 at 6) to be referring to this quoted jury instruction.

basis of a "single incident" or custom is based on an unjustifiably narrow reading of the complaint. Preston alleged in her complaint that the City had a "*de facto* policy of permitting RPD officers to shoot dogs" and that "Leach was never disciplined for shooting Zyria, nor did he ever receive additional and/or remedial training on how to safely interact with dogs during law enforcement activities." (Dkt. 1 at ¶¶ 16, 139). And even if Preston had not articulated this potential basis for municipal liability in her complaint, that would not impact whether the policy, custom, or practice issue was actually litigated and decided in the *Dempsey* matter. It was, for the reasons articulated above.

For all these reasons, the Court finds that the second requirement for offensive collateral estoppel is satisfied with respect to the custom, policy, or practice issue. Further, Defendants have not contested that the third and fourth requirements for offensive collateral estoppel are required, and the Court finds, upon review of Preston's submissions, that she has met her burden as to these requirements. Accordingly, the Court moves to consideration of fairness.

## IV.  Fairness Analysis

Defendants argue that it would be unfair to apply offensive collateral estoppel in this case because: (1) another judge in this District has "granted summary judgment for Defendants on deliberate indifference for a dog seizure in *Cox v. City of Rochester*," No. 22-CV-6207-FPG, 2025 WL 50340 (W.D.N.Y. Jan 8. 2025); (2) it is "unclear" whether offensive collateral estoppel applies to municipalities; and (3) the *Dempsey* jury instructions were "inconsistent with prior instructions and binding

precedent" as to deliberate indifference. (Dkt. 82 at 9-11). The Court is unpersuaded by these arguments, for the reasons that follow.

### A.      The Existence of an Inconsistent Prior Judgment

Considering first the decision in *Cox*, it is not clear to the Court that Defendants are arguing that *Cox* constitutes an inconsistent prior judgment with respect to the custom, policy, or practice issue. Defendants argue that:

> The Court should deny Ms. Preston's motion to apply collateral e[s]toppel on the deliberate indifference theory, because it would be unfair to apply the *Dempsey* verdict against Defendants when the Western District has also *granted* summary judgment for Defendants on deliberate indifference for a dog seizure in *Cox v. City of Rochester*.

(Dkt. 82 at 9). They go on to argue that "[f]airness dictates that the Court decline to apply the *Dempsey* verdict to *Preston* when the Western District has reached the opposite conclusion regarding deliberate indifference in a similar case." (*Id.* at 10 (emphasis added)). Defendants make no arguments regarding *Cox* and the custom, policy, or practice issue.

Nonetheless, and mindful that it is Preston's burden to demonstrate fairness, *see S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 306 (2d Cir. 1999), the Court has considered whether the existence of the *Cox* decision renders it unfair to apply collateral offensive estoppel as to the custom, policy, or practice issue and concludes that it does not. In *Cox*, the court determined that "the evidence offered by Plaintiff [did] not demonstrate a pattern of misconduct" sufficient to establish an unwritten custom or policy. 2025 WL 50340, at *7. The *Cox* court explained that the plaintiff had identified nine instances in which RPD officers had shot pet dogs, but that for six

- 11 -

out of the nine instances, she had failed to substantiate her claim that the shootings were unreasonable. *Id.* at \*7. That left the *Cox* court to consider only "three cases of misconduct over three years," and it concluded that "three incidents of misconduct over three years are insufficient to establish a pattern of misconduct for the *Monell* claim." *Id.*

The Court does not view *Cox* as a genuinely conflicting judgment with respect to the custom, policy, or practice issue. Carefully reading *Cox* and reviewing the record in that matter and in *Dempsey*, it is clear that the *Cox* court was not presented with the same scope of evidence as the *Dempsey* jury. For example, one of the six incidents in *Cox* where the court found the plaintiff had "either . . . not allege[d] or . . . not provide[d] evidence that the[] shootings were unreasonable" was the shooting of the *Dempsey* plaintiffs' pet dog. *Cox*, 2025 WL 1132854, at \*7; *see* Plaintiff's Counterstatement of Undisputed Facts Pursuant to Rule 56.1, *Cox v. City of Rochester,* No. 22-CV-6207 FPG, Dkt. 51-1, at ¶¶ 114-118 (W.D.N.Y. Aug. 26, 2024). The *Dempsey* jury was presented with significantly more evidence regarding this incident than the *Cox* court, and in fact concluded based on that evidence that the shooting of the *Dempsey* plaintiffs' pet dog was an unconstitutional seizure.

The *Cox* court did not find that City did not have a custom, policy, or practice regarding dog seizures. The *Cox* court found that the plaintiff in that case had failed to marshal sufficient evidence to prove the existence of such a custom, policy, or practice. The *Dempsey* jury was presented with additional evidence, and concluded that such a custom, policy, or practice did exist. These conclusions are not in conflict,

and so the *Cox* decision does not counsel against application of offensive collateral estoppel as to the custom, policy, or practice issue. *See Cousik v. City & Cnty. of Denver*, No. 22-CV-01213-NYW-KAS, 2024 WL 4929272, at *6 (D. Colo. Dec. 2, 2024) (finding no "unfair inconsistency" between jury verdict and summary judgment decision, where the summary judgment decision "was largely based on Plaintiffs' presentation of their case . . ., not necessarily a lack of supportive evidence").

### B.    Application of Offensive Collateral Estoppel to Municipalities

Defendants next argue that it is unfair to apply offensive collateral estoppel against it because "courts are divided on whether collateral estoppel applies to municipalities." (Dkt. 82 at 10). The Court disagrees.

In *United States v. Mendoza*, 464 U.S. 154 (1984), the Supreme Court held that offensive collateral estoppel does not apply to the federal government. *Id.* at 158. The *Mendoza* court explained that the federal government is not in a position identical to that of a private litigant, "both because of the geographic breadth of government litigation and also, most importantly, because of the nature of the issues the government litigates." *Id.* at 159. The *Mendoza* court noted that the federal government "is a party to a far greater number of cases on a nationwide basis than even the most litigious private entity" and that such cases "frequently involve[] legal questions of substantial public importance[.]" *Id.* "Some federal courts have adopted the reasoning of *Mendoza* to preclude the use of non-mutual collateral estoppel against a state or state agency." *King v. Rivas*, No. CIV. 04-CV-356-JD, 2006 WL 120166, at *1 (D.N.H. Jan. 17, 2006).

- 13 -

"The Second Circuit has not extended *Mendoza* to suits involving state or local governments." *DeCastro v. City of N.Y.*, 278 F. Supp. 3d 753, 764 n.13 (S.D.N.Y. 2017). To the contrary, in *Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir. 1990), the Second Circuit distinguished *Mendoza* and affirmed the application of offensive collateral estoppel to state prison officials. *Id.* at 576. Defendants "cite no case in which a court stretched the holding in *Mendoza* to apply to a municipal defendant or individuals, such as themselves." *King*, 2006 WL 120166, at *1. And the rationale in *Mendoza* does not, on its face, apply to a municipal entity such as the City, which does not share the geographic breadth and nationwide scope of the federal government. Indeed, federal courts post-*Mendoza* have applied offensive collateral estoppel to municipal entities. *See, e.g, Cousik*, 2024 WL 4929272, at *6 (applying offensive collateral estoppel against the City and County of Denver); *DeCastro*, 278 F. Supp. 3d at 765 (applying offensive collateral estoppel against the City of New York); *Kluppelberg*, 276 F. Supp. 3d at 779 (applying offensive collateral estoppel against the City of Chicago). For these reasons, and in the absence of any Second Circuit decision extending *Mendoza* to state or local governments, the Court does not find that it is unfair to apply offensive collateral estoppel against the City.

## C.    The *Dempsey* Jury Instructions

Defendants' final fairness argument is that the *Dempsey* jury instructions erroneously did not require the plaintiffs "to identify a municipal policymaker or establish how a municipal policymaker chose to retain a specific training program after notice that the training program caused (or was substantially likely to cause)

constitutional violations." (Dkt. 82 at 11). This argument is addressed solely to the deliberate indifference/failure to train issue, as to which the Court has already determined the City is not collaterally estopped. Defendants have identified no purported error in the *Dempsey* jury instructions regarding the custom, policy, or practice issue, and the Court's own review of the *Dempsey* jury instructions does not cause it to conclude that it would be unfair to apply collateral estoppel on that issue.

## D.    Other Fairness Considerations

The Court has also considered the other fairness factors identified in *Bifolck* and concludes that they support the application of offensive collateral estoppel with respect to the custom, policy, or practice issue. There are no procedural opportunities available here that were unavailable in *Dempsey*. The City had an equally compelling incentive to litigate the custom, policy, or practice issue in *Dempsey* as it has in this matter. *Dempsey* was tried to a jury and not to a judge sitting as trier of fact. This action and *Dempsey* are not sufficiently different in scope or complexity to make application of offensive collateral estoppel unfair. And, applying collateral estoppel will increase the efficiency of the proceedings in this matter, by streamlining the proceedings.

For all these reasons, the Court finds that Preston has shown that the City should be collaterally estopped with respect to the custom, policy, or practice issue. More precisely, at the trial in this matter, the City will be collaterally estopped from arguing that it did not have a custom, policy, or practice of authorizing its officers to use lethal force against dogs encountered during police operations without first

assessing the actual threat posed by the dog.

## V.     Other Issues Raised by Defendants

In opposition to Preston's motion, Defendants have also argued that: (1) Preston improperly seeks to use offensive collateral estoppel "to fully estop entire theories of liability"; and (2) that the Court should not inform the jury of the collateral estoppel prior to final jury instructions. (Dkt. 82 at 11-14).

As to the first of these issues, Preston has clarified in her reply that she seeks preclusion only as to discrete issues and has acknowledged that she still must prove "that Officer Leach's shooting of Zyria violated the Fourth Amendment, and . . . that the City's unconstitutional policy . . . was the moving force behind Officer Leach's conduct." (Dkt. 85 at 12). The Court will discuss with the parties at the charge conference in this matter the precise wording of the jury charge.

As to the second of these issues, at the pretrial conference held in this matter on March 26, 2026, the Court advised the parties of its anticipated ruling on the instant motion and instructed the parties to submit proposals as to how and when the jury would be advised of the collateral estoppel. The Court will review those proposals and address the matter at the pretrial conference scheduled for April 10, 2026.

## CONCLUSION

For the foregoing reasons, Preston's motion for preclusion pursuant to the doctrine of offensive collateral estoppel (Dkt. 65) is granted in part and denied in part. At the trial in this matter, the City will be collaterally estopped from arguing that it

- 17 -

did not have a custom, policy, or practice of authorizing its officers to use lethal force against dogs encountered during police operations without first assessing the actual threat posed by the dog.

     SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge


Dated:   Rochester, New York
         April 1, 2026